CLINTON v. GENERAL MOTORS CORPORATION.

5-1585                                    318 S. W. 2d 577

Opinion delivered December 15, 1958.

Wright, Harrison, Lindsey & Upton, for appellant.

Rose, Meek, House, Barron & Nash, Edwin E. Dunaway, Henry M. Hogan and Daniel Boone, Detroit, Michigan, for appellees.

H. Maurice Mitchell, Beresford L. Church, Jr., Spitzberg, Bonner & Mitchell, for appellee; Wood & Smith, amicus curiae brief for Ford Motor Co. Richard B. Darrah, Dearborn, Michigan, Owens, McHaney, Lofton & McHaney, amicus curiae brief for Chrysler Corp., and Leland J. Markley, Kelley, Drye, Newhall, Herbert F. Moshier, Detroit, Michigan.

LEON B. CATLETT, Special Associate Justice. Act 530, which became effective on July 1, 1957, created the Arkansas Motor Vehicle Commission, composed of a Chairman and six members, and provided for the regulation by such Commission of the sale and distribution of new motor vehicles in Arkansas. On June 27, 1957, six automobile dealers, including franchised new car dealers and non-franchised new car dealers, filed suit in the Pulaski Chancery Court seeking a declaratory judgment that Act 530 was unconstitutional in multiple respects under the State and Federal Constitutions and for an injunction against its enforcement. On August 27, 1957, General Motors Corporation, a non-resident automobile manufacturer, filed suit in the same Court praying the same relief as asked in the case of the

six automobile dealers for substantially the same reasons. The two cases were consolidated for trial, and on January 14, 1958, the Court below held the Act "unconstitutional in its entirety because it contravenes the Constitution of Arkansas and the Constitution of the United States in several respects, particularly: 1. The Act contains arbitrary classifications among persons following the same calling and trade. 2. The Act is not a valid exercise of the police power. 3. The Act fails to provide for an impartial tribunal. 4. The standards set out in the Act are not sufficiently definite. 5. The Act constitutes a prohibited delegation of legislative powers. 6. The Act imposes unreasonable burdens and restrictions on interstate commerce."

Excellent briefs have been submitted by the parties and by Ford Motor Company and Chrysler Motor Corporation as *amici curiae*.

The legislation and ensuing litigation are a sequel to a similar Act, No. 182 of 1955, reviewed and declared unconstitutional in *Rebsamen Motor Company* v. *Phillips*, 226 Ark. 146, 289 S. W. (2d) 170. In the *Rebsamen* case the Court found that Act 182 contravened Section 18, Article 2 of the Arkansas Constitution by arbitrarily classifying dealers in new and unused cars as subject to the required license, while exempting dealers engaged in the sale of new and used cars. The question presented is whether Act 530 of 1957 is sufficiently different from Act 182 of 1955 to eliminate unconstitutional features.

Section 2(a) of Act 530 of 1957 defines a "New Motor Vehicle" as "any motor vehicle transferred for the first time from a manufacturer, distributor or wholesaler, factory branch or distributor's branch, and which motor vehicle has theretofore not been used." The remainder of Section 2 is devoted to defining, among other terms, "Motor Vehicle Dealer," "Commission," "Manufacturer," "Distributor," "Wholesaler," "Factory Branch" and "Distributor Branch." Section 3 creates the Arkansas Motor Vehicle Commission and empow-

ers it to "make and enforce all reasonable rules and regulations" necessary to accomplish the purposes of the Act. Section 4(a) specifies that on or after July 1, 1957, engaging in business as a motor vehicle dealer, or manufacturer, distributor or wholesaler of motor vehicles without first obtaining the license required by the Act, constitutes a misdemeanor with each day of violation a separate offense, and Section 4(b) requires an applicant to execute a form prescribed by the Commission containing information relating to the applicant's financial standing, business integrity, whether applicant has an established place of business and is primarily engaged in the pursuit of the business for which a license is sought, and whether the applicant is able to conduct properly such business and such other pertinent information consistent with the safeguarding of the general economy, public interest and public welfare. Section 4(c) sets forth a schedule of license fees and Section 4(d) provides that a change of location must be sanctioned by a new license. Section 5 enumerates the grounds for denying, revoking, suspending or delaying the issuance of a license, and specifies that such action may be taken by the Commission if a "Motor Vehicle Dealer" (a) has required a purchaser of a new motor vehicle, as a condition of delivery thereof, to also purchase special features, appliances, accessories or equipment not desired by the purchaser; (b) has represented and sold as a new and unused motor vehicle any motor vehicle which has been used and operated for demonstration purposes, or which is otherwise a used motor vehicle; or (c) resorts to or uses any false or misleading advertising in connection with his business as a "Motor Vehicle Dealer."

Customarily, manufacturers of automobiles sell new motor vehicles, through their distribution systems, only to dealers with whom they have a franchise or contract.

A careful and painstaking comparison of the provisions of Act 530 of 1957 with those of Act 182 of 1955 fails to disclose any real difference in the basic requirements imposed by Act 530 in connection with "any mo-

tor vehicle transferred for the first time from a manufacturer, distributor or wholesaler, factory branch or distributor branch, and which motor vehicle has theretofore not been used," and the requirements imposed by Act 182 in connection with "the sale of new and unused motor vehicles" by a dealer holding a *bona fide* contract with or franchise from a manufacturer of such vehicles. Nor has any difference been discerned between the sale of a "motor vehicle transferred for the first time" and the sale of "a new and unused motor vehicle." Both Acts regulate and require the payment of license fees by identical classes, while the competitors of such classes engaged in the same business are not regulated or required to pay such fees. There is no reasonable basis for placing the franchised dealers under regulation and requiring them to pay license fees, while not making the same requirements of the non-franchised or independent dealers.

In the case of *Rebsamen Motor Company* v. *Phillips, supra,* this Court pointed out that while the manufacture and sale of motor vehicles constitutes an area by no means exempt from regulation under the police power of the State, such regulation may not extend to a point where competition is circumscribed in an unreasonable manner. Act 530 and Act 182 reach an identical result in this respect.

In reaching this decision we do not desire to create an impression that the wisdom of legislation has or will become a factor in judicial appraisal where attack is made on constitutional bases. However, as we have often held, the police power may not be applied to a class without equal application to all members of such class.

While additional grounds of unconstitutionality are urged, some of which are meritorious, in view of our conclusion, a discussion of these points is unnecessary. Act 530 of 1957 is unconstitutional in its entirety.

Affirmed.

The Chief Justice and Mr. Justice WARD dissent.

GEORGE ROSE SMITH and WILLIAM J. SMITH, JJ., not participating.

PAUL WARD, Associate Justice (dissenting). For the reasons hereafter set out, I am unable to agree with the majority opinion.

I cannot help feeling that those making the majority opinion have missed entirely the purpose and the essential provision of Act 530 of the 1957 General Assembly. The sole and only purpose of the Act was not to *punish* but to *help* the franchise dealers of Arkansas. This is specifically stated in Section 1 of the Act. This plain fact seems to have entirely escaped the majority, because they say: "There is no reasonable basis for placing the franchised dealers under regulation and requiring them to pay a *license fee*" (my emphasis). It is, of course, the view of the complaining dealers [and General Motors Corporation] that the Act is a burden on them, but that certainly does not express the attitude of a vast majority of the franchise dealers of Arkansas. Confirmation of this conviction is the fact that they are so persistent in their efforts to obtain this kind of legislation. Section 1 of the Act explains clearly why auto manufacturers are opposing this legislation. It removes the economic pressure they now are able to exert upon their dealers.

Having understood the purpose of the act, it is now pertinent to examine the question of "classification". The essence of the majority opinion is that there is "an arbitrary classification among persons following the *same trade* or *calling*". (my emphasis). So it will be interesting to have a look at just what are these classifications, and just how arbitrary they are.

*One group* consists of authorized dealers who sell new cars. This group [as stated in said § 1] are subjected to superior economic pressure and thereby forced into agreements, acts, and practices which produce harmful effects on the general economy. Those in this group can resist this pressure only at the risk of losing their

business to others who are willing to submit and thus start the round robbin of economic pressure all over again.

*In the other group* are used car dealers, and they are not affected by the Act in any way. Those in this group do not have to buy more cars than they want and therefore are not under the pressure imposed on the first group.

To say, as the majority does in effect, that this difference between the two groups is imaginary and that a classification based thereon is arbitrary is simply being unrealistic. Neither is it realistic to say both groups are engaged in the *same kind of business*. Of course both groups deal basically with automobiles, but they do so under entirely different circumstances and conditions. The legislature has always recognized classification distinctions, and with this courts approval. For example, the county officers in one county deal with the same matters as officers in other counties, but they are nevertheless classified as to salaries solely on the basis of different conditions. All cities deal with local government but they are also classified and given different powers and duties depending on different conditions. In the case of *Ring* v. *Mayor and Council of Borough of North Arlington*, 136 N. J. L. 494, 56A. 2d 744, in dealing with this precise question, the court said: "In the exercise of the power to license for regulation and revenue, distinctions may be made not only between businesses of different character, but also between businesses of the *same general class* where there are *substantial differences* in the subject matter and *trade methods and practices* related to the object of legislation" (my emphasis). It was also said in the *Ring* case: "A distinction in legislation 'is not arbitrary, if any state of facts reasonably can be conceived that would sustain it' ".

Neither do I agree that this case is controlled by the *Rebsamen* case, cited in the majority opinion. The gravamen of the *Rebsamen* opinion is found on page 152 of the Ark. Reports. It holds that there is no distinction between selling *"new and unused cars"* and selling "new and used cars". A careful examination of Act 530 reveals

that no such classification is made. Of course I took the view in the *Rebsamen* case, as shown by my dissenting opinion, that the classification there was not arbitrary, and I certainly do not want to extend further the restrictive scope of that opinion. In the *Rebsamen* case both groups dealt with *new* cars while here only one group does. That one distinguishing feature alone, added to the numerous other distinguishing features enumerated heretofore, constitutes the basis for a reasonable classification, and that is all this court has ever required. For confirming decisions see: *Williams* v. *State,* 85 Ark. 464, 108 S. W. 838; *Kelso* v. *Bush,* 191 Ark. 1044, 89 S. W. 2d 594; *Bollinger* v. *Watson,* 187 Ark. 1044, 63 S. W. 2d 642; *Hogue* v. *The Housing Authority of North Little Rock,* 201 Ark. 263, 144 S. W. 2d 49, and; *Thompson, Com. of Revenues* v. *Continental Southern Lines, Inc.,* 222 Ark. 108, 257 S. W. 2d 375.