# ARKANSAS MOTOR VEHICLE COMMISSION
## et al *v.* CLIFF PECK CHEVROLET, INC.

82-7                                    640 S.W.2d 453

Supreme Court of Arkansas
Opinion delivered October 18, 1982

*Steve Clark*, Atty. Gen., by: *Jerry E. Rose*, Asst. Atty. Gen., and *Friday, Eldredge & Clark*, by: *Herschel H. Friday, Michael G. Thompson* and *Walter A. Paulson*, for appellants.

*House, Holmes & Jewell, P.A.*, by: *Darrell D. Dover*, for appellee.

*Barber, McCaskill, Amsler, Jones & Hale*, by: *Guy Amsler, Jr.*, for *amicus curiae*, Arkansas Automobile Dealers Association.

*John C. Calhoun, Jr.* of *Owens, McHaney & Calhoun*, for *amicus curiae*, National Association of Motor Vehicle Boards and Commissions.

GEORGE ROSE SMITH, Justice. We are called upon to consider the constitutional validity of the General Assembly's fifth successive act creating a Motor Vehicle Commission. Act 388 of 1975; Ark. Stat. Ann., Title 75, Ch. 23 (Repl. 1979). The chancellor, relying upon our two previous decisions with respect to similar legislation, held this latest act invalid. We are convinced that in the two earlier cases the pertinent facts were not sufficiently developed to support our conclusion that the acts were unconstitutional. The present record is equally deficient in the presentation of facts affecting the validity of the 1975 act. We are therefore remanding the case for further development, not reaching the constitutional issue.

None of the legislature's four earlier attempts to create a Motor Vehicle Commission survived for as long as two years. In the first statute, Act 182 of 1955, the legislature created a Motor Vehicle Commission with authority to license and regulate manufacturers and factory distributors of "new and unused" cars and franchised retail dealers in such cars. One franchised dealer promptly brought an action for a judgment declaring the act to be invalid because it did not also license and regulate used-car dealers, some of

whom were shown to be obtaining and selling "bootleg" new cars. We held the act to be discriminatory in that it made an arbitrary classification between franchised dealers and used-car dealers. *Rebsamen Motor Co.* v. *Phillips,* 266 Ark. 146, 289 S.W.2d 170, 57 A.L.R. 2d 1256 (1956). The second statute, Act 530 of 1957, was so similar to the first act that it quickly met the same fate. *Clinton* v. *General Motors Co.,* 229 Ark. 805, 318 S.W.2d 577 (1958).

The third regulatory measure, Act 199 of 1961, was referred to popular vote and was disapproved by a majority of almost six to one. *See* Compiler's Notes, Ark. Stat. Ann. §' 75-1501 (Repl. 1979). The fourth statute, Act 593 of 1973, was on its face a local act, because six sections were inserted to exempt various counties from its operation. Presumably it was for that reason that the General Assembly adopted the present superseding statute two years later.

The fifth statute, the 1975 act now before us, had been in force six years when its validity was challenged in this case by Cliff Peck Chevrolet, a franchised dealer having a contract with a General Motors subsidiary. The case arose from the Commission's attempt to enforce its Regulation 1, a long directive which prohibits, among many other practices, advertising claims such as "Our prices are guaranteed lower than elsewhere" or "We guarantee to sell for less." Cliff Peck asserted in its complaint that the Commission was threatening to revoke Cliff Peck's license as a retail dealer because, as shown by a stipulated fact, Cliff Peck had advertised that the "best prices in Arkansas" were to be found at its dealership. The complaint, however, attacked not only Regulation 1 but also Act 388 in its entirety. The chancellor simply followed the *Rebsamen* and *Clinton* cases in holding the act invalid.

Act 388 is so nearly identical with the 1955 act held unconstitutional in *Rebsamen* that even the appellants make no effort to distinguish that case from this one, their position being that *Rebsamen* and *Clinton* should be overruled. We agree with that conclusion in the limited sense that the facts presented in those cases did not justify the court's holding that there was an arbitrary classification as

between franchised dealers and used-car dealers. There the scant testimony in the record merely showed that there were three used-car dealers in Pulaski county who were obtaining new cars from an undisclosed source and that only one of those dealers had a repair department for servicing the cars after their sale. We concluded on those facts alone that the act was discriminatory.

In *Rebsamen* we relied primarily upon our holding in *Ex parte Deeds,* 75 Ark. 542, 87 S.W. 1030 (1905), invalidating a statute which imposed a $200 license fee upon peddlers traveling over the county but exempted resident merchants from the fee. The *Deeds* opinion relied in turn upon the broad statement in *Connolly* v. *Union Sewer Pipe Co.,* 184 U.S. 540 (1902), that the legislature "cannot divide those engaged in trade into classes and make criminals of one class if they do certain forbidden things, while allowing another and favored class engaged in the same domestic trade to do the same things with impunity." In *Connolly* the court struck down an Illinois anti-trust statute because it exempted from its operation agricultural products or livestock while in the hands of the producer or raiser. The *Connolly* decision was expressly overruled in *Tigner* v. *Texas,* 310 U.S. 141 (1940), with the observation that its point of view had been worn away by the erosion of time. Certainly it would not be seriously argued today that a statute directed against monopolies would be invalid on its face if agricultural products were exempted from its prohibitions.

In each of the five Arkansas acts the General Assembly made findings that the proposed licensing and regulation of manufacturers and franchised dealers were necessary. None of the acts required used-car dealers to be licensed. In the act now under scrutiny the legislature declared its intention to prevent frauds, unfair practices, and discrimination, to avoid undue control of independent dealers by motor vehicle manufacturers, to prevent monopolies and preserve competition, to prevent the sale of unnecessary accessories not desired by the purchaser, to prevent false and misleading advertising, and to promote other purposes. Ark. Stat. Ann. § 75-2302 (Repl. 1979). In view of the familiar presumption

in favor of constitutionality, such findings cannot be disregarded without proof that there is no factual basis for the classifications and prohibitions embodied in the act.

It may be inferred from the several statutes and from the arguments of counsel that there may be a need to curtail the power that motor vehicle manufacturers have over their dealers, that the new-car warranties given by franchised dealers may be a valid basis for classifying them differently from used-car dealers, that the consequences of misleading advertising are not the same with respect to new cars as with respect to used cars, and that there may be other factual grounds for the various regulatory powers that are vested in the Motor Vehicle Commission. Such matters have not even been touched upon in the present record, which consists only of the pleadings and a brief stipulation designed to bring the case within the holdings in *Rebsamen* and *Clinton.* We find it impossible to pass upon the constitutionality of the statute without these factual matters having been developed by proof. Because Cliff Peck was justified in relying upon our earlier cases as decisive of the constitutional issues, it is entitled to offer proof now that those decisions are no longer considered to be controlling. *Foote's Dixie Dandy* v. *McHenry,* 270 Ark. 816, 607 S.W.2d 323 (1980). The cause is therefore remanded to the trial court for further proceedings, where Cliff Peck will have the burden of proving that all or part of the statute is unconstitutional and where other parties, such as a representative manufacturer, may be brought into the suit if appropriate.

Reversed and remanded.