The STATE of Texas

v.

**Larry Don DOTSON, Appellant.**

No. PD–0614–06.

Court of Criminal Appeals of Texas.

May 23, 2007.

Dawn A. Moore, Denton, for Appellant.

Kathleen A. Walsh, Assistant District Atty., Denton, Matthew Paul, State's Atty., Austin, for State.

## OPINION

PRICE, J., delivered the opinion for a unanimous Court.

We granted review in this case to examine whether the Second Court of Appeals erred in deciding that Article 21.25 of the Texas Code of Criminal Procedure was not applicable.[1] We conclude the court of appeals did err in its conclusion. Therefore, we reverse the judgment of the court of appeals and remand to the court of appeals for consideration of the appellant's remaining points of error.

## THE FACTS AND PROCEDURAL POSTURE

In January 1994, a grand jury returned two indictments against the appellant. Both indictments alleged involuntary manslaughter, but each named a different victim: Tracy Carlton and Natalie Gale.[2] On

---

1. Tex.Code Crim. Proc. Ann. art. 21.25 (Vernon 1989).

2. This case involves a rather peculiar factual scenario and that peculiarity is exacerbated by the particular procedure for procuring indictments in Denton County. Grand juries in Denton County apparently return identical, duplicate original indictments for each cause. These duplicates are not considered copies, but original products of the grand jury.

To facilitate both our description of the facts and our analysis of the issue, we will define certain terms as they appear in this opinion. In the context of the following discussion, "duplicate original" refers to an indictment that was returned by the grand jury, presented to the trial court, and that bears original file-markings from the district clerk's office. The "original indictment" is defined as the indictment that was presented to the trial court with the intention of being retained by the trial court in the district clerk's file, thus vesting jurisdiction in the trial court. A "copy" is an identical reproduction of a duplicate original indictment. A copy does not have to be a direct reproduction of a duplicate original; it can be a reproduction of an already-made copy. "Filed indictment" is defined as the indictment on file with the district clerk in cause number 113 with Tracy Carlton as the named victim. We define the term "purported original" as the indictment that the State contends is the original indictment in cause number 113, alleging Natalie Gale as the victim, that was erroneously omitted from the district clerk's file. "Substituted indictment" refers to the indictment that was substituted by the trial court for the filed indictment at the hearing on the motion to substitute indictment. The purported original indictment became the substituted indictment after the trial court ruled on the motion to substitute indictment. We reiterate that these definitions are meant only to facilitate a factual and analytical understanding of this particular case.

June 9, 1994, the appellant pled guilty, pursuant to a plea agreement, to two seemingly separate charges of involuntary manslaughter in cause numbers F–94–0112–E ("112") and F–94–0113–E ("113"). The trial court sentenced him to ten years in the Correctional Institutions Division of the Texas Department of Criminal Justice in each case, but suspended the two sentences and placed the appellant on community supervision for ten years for each conviction.

On March 13, 2003, the State sought to revoke the appellant's community supervision. In the course of preparing the motions to revoke, the State discovered that the indictments on file in the district clerk's office in cause numbers 112 and 113 were identical. Though assigned different cause numbers, the indictments in the clerk's file were the same in every regard, including the named victim, Tracy Carlton. Subsequent to this discovery, the State filed a motion to substitute indictment under Article 21.25 of the Code of Criminal Procedure. The appellant filed an application for a writ of habeas corpus on grounds that double jeopardy was violated when the appellant pled guilty to the exact same offense more than once.

The trial court conducted a hearing on the three motions.[3] At the hearing, the State hypothesized that a clerical error occurred in the clerk's office that resulted in the two identical indictments ending up in the clerk's file. In support of this hypothesis, the State called Kevin Henry, chief of the intake section for the Denton County District Attorney, to testify about the general procedure for procuring an indictment in that county. Henry testified that, once a grand jury decides to indict an individual, four duplicate original indictments are returned in each cause. Upon return, these duplicate originals are presented to the trial court, which presumably retains one for the clerk's file (the "original" indictment), and then the remaining duplicate originals are apparently distributed to the State, the defense, and to the Denton County Probation Department.[4] Henry opined that, in this particular case, it is possible the clerk's office mistakenly filed the same indictment twice because the appearance of each indictment was identical except for the named victim.

To establish that the error was clerical, the State presented evidence that the State, the appellant's trial counsel, and the Denton County Probation Department all received copies of the indictment that bore file markings by the clerk's office and showed Natalie Gale as the victim in cause number 113 and Tracy Carlton as the victim in cause number 112.[5] Witnesses from all three testified that they were aware that the appellant was charged with two

---

3. On August 15, 2003, the trial court began the hearing on the State's motion to substitute indictment. On October 24, 2003, the court continued that hearing and also heard the appellant's application for writ of habeas corpus as well as the State's revocation motion.

4. Specifically, Henry testified:
Q. What happens with those four originals in each case?
A. Well, initially they're—we bring them back into the courtroom, and they are presented to the judge who's presiding over the grand jury at the time, or a substitute judge or whatever arrangements have been made.

At that point the indictments are distributed to the various parties that may be involved in the case.

5. The State introduced copies of the indictments contained in its file as well as the files of the probation department and the appellant's trial counsel. It is unclear whether these files contained an actual duplicate original indictment or a copy of a duplicate original. Therefore, it is equally unclear whether the copies introduced into evidence at the hearing were copies of a duplicate original or copies of a copy.

separate offenses. In fact, the appellant's trial counsel stated that he proceeded to represent the appellant with the understanding that the appellant faced two separate charges for involuntary manslaughter. He further testified he would not have accepted a plea agreement had he thought the appellant was pleading guilty twice to the exact same crime.

The State offered into evidence a purported original indictment in cause number 113, with Natalie Gale as the named victim. This indictment was signed by both the jury foreman and the District Attorney and was file stamped by the clerk's office. Additionally, the State elicited testimony from two witnesses that this particular indictment was the original because the handwritten cause number and the file stamp were in blue ink.[6] The State then requested the trial court to substitute the purported original indictment for the filed indictment.

After hearing all of the evidence, the trial court concluded that a clerical error had been committed and that Article 21.25 of the Code of Criminal Procedure is available to remedy this type of situation. The trial court granted the State's motion to substitute indictment in cause number 113, denied the appellant's application for a writ of habeas corpus, and ultimately granted the State's motion to revoke the appellant's community supervision.

The appellant appealed the trial court's rulings and challenged, among other things, the decision to substitute the indictment in cause number 113. The court of appeals held that Article 21.25 is not applicable to this case because the "record does not reflect that the indictment was lost, mislaid, mutilated, or obliterated."[7] The court of appeals then observed:

> The record reflects that the grand jury returned an indictment naming Natalie Gale as the injured party, but [the] [a]ppellant did not plead to that indictment and that indictment was not in the file in cause number [113] until after the trial court granted the State's motion to substitute, almost nine years after the plea.[8]

The court of appeals declared that double jeopardy was clearly violated when the appellant pled guilty to two identical indictments.[9] To remedy this, the court of appeals declared the appellant's conviction in cause number 113 to be void and reversed the trial court's judgment.[10] Subsequently, the State filed its petition for discretionary review challenging the court of appeals' reversal of cause number 113, which we granted to examine the issue of whether Article 21.25 authorizes the substitution of an indictment under these circumstances.

## ANALYSIS

### Article 21.25

Article 21.25 dates back to the late 1800s.[11] The language of the statute re-

---

**6.** Both Kevin Henry and Debra Carreathers, the chief deputy of the district clerk's office, identified the proffered indictment as an original.

**7.** *Dotson v. State*, 190 S.W.3d 783, 785 (Tex. App.-Ft. Worth 2006).

**8.** *Id.*

**9.** *Id.*

**10.** *Id.* The trial court was reversed only in cause number 113; the appellant's conviction in cause number 112 was affirmed. *Id.* at 785–786. The appellant did not file a petition for discretionary review to challenge the court of appeals' affirmance in cause number 112.

**11.** Act approved February 15, 1858, 7th Leg., R.S., ch. 151, § 1, 1871 Tex. Gen. Laws 228, 236–37, *reprinted in* 4 *H.P.N. Gammel, The Laws of Texas 1822–1897*, at 1108 (Austin,

mains relatively untouched and essentially reads the same today as it originated.[12] Currently, Article 21.25 reads:

> When an indictment or information has been lost, mislaid, mutilated or obliterated, the district or county attorney may suggest the fact to the court; and the same shall be entered upon the minutes of the court. In such case, another indictment or information may be substituted, upon the written statement of such attorney that it is substantially the same as that which has been lost, mislaid, mutilated, or obliterated. Or another indictment may be presented, as in the first instance; and in such case, the period for the commencement of the prosecution shall be dated from the time of making such entry.[13]

Though the statute is longstanding, it has received relatively little judicial attention, especially in recent times. Past cases have focused on whether the procedural requirements for the substitution of an indictment have been met.[14] In our case,

we are not confronted with such an issue; instead, we must determine the general applicability of Article 21.25 to the particular facts of this case.[15]

We are faced with what we hope is an unusual factual scenario in which the district clerk's file contains identical indictments in separately numbered causes charging the appellant with the same offense. The State alleges that the court of appeals erred when it determined Article 21.25 was inapplicable to this case. The State contends that if the indictment returned by the grand jury in cause number 113 is not the indictment presently located in the clerk's file, then the original indictment has either been lost or mislaid. The appellant counters that Article 21.25 is not applicable because the original indictment in cause number 113 is the filed indictment, and, thus, has never been lost or mislaid. In addition, the appellant further argues that there is no evidence that the substituted indictment in cause number 113 was ever properly presented by the

---

Gammel Book Co. 1898). This act amended the Code of Criminal Procedure of 1857. The specific article in the act pertaining to the substitution of indictments was art. 406a. *See id.*

12. *Compare id. and* Tex.Code Crim. Proc. art. 434 (1879) *and* Tex.Code Crim. Proc. art. 470 (1895) *and* Tex.Code Crim. Proc. art. 482 (1911) *and* Tex.Code Crim. Proc. art. 418 (1925) *with* Tex.Code Crim. Proc. art. 21.25 (1965).

13. Tex.Code Crim. Proc. Ann. art. 21.25 (Vernon 1989).

14. *See, e.g., Burton v. State,* 135 Tex.Crim. 4, 117 S.W.2d 107 (1938) (holding that when the record contains neither an original indictment nor shows proper substitution, then the conviction must be reversed); *Farrell v. State,* 125 Tex.Crim. 96, 66 S.W.2d 694 (1934) (articulating that the record must reflect that a request to substitute has been made in open court and that an order has been entered to

substitute the indictment); *Hawk v. State,* 115 Tex.Crim. 25, 27 S.W.2d 178 (1930) (discussing whether a defendant is entitled to notice of the State's intention to substitute an indictment); *Morris v. State,* 96 Tex.Crim. 337, 257 S.W. 899 (1924) (describing the procedure to substitute an indictment, which includes the filing of a formal motion); *White v. State,* 72 Tex.Crim. 16, 160 S.W. 703 (1913) (holding substitution is improper when the record does not contain a statement that substituted indictment is substantially the same as the indictment that was lost).

15. The appellant never complained that the procedural requirements under Article 21.25 were not satisfied. *See Carrillo v. State,* 29 S.W.3d 262, 263–64 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd), *on remand from* 2 S.W.3d 275 (Tex.Crim.App.1999) (holding that one must object to any perceived procedural defect in the substitution of an indictment to preserve the error for appeal). Nor did he make any such challenge in the court of appeals.

grand jury in accordance with Article 20.21 of the Code of the Criminal Procedure.

### Presentment

■ Before addressing the issue at hand, we must first answer a preliminary question concerning whether the substituted indictment was properly presented. We conclude that the indictment charging the appellant with the involuntary manslaughter of Natalie Gale, the substituted indictment in cause number 113, was properly presented to the trial court. Article 20.21 governs the presentment of indictments.[16] Presentment occurs when an indictment is delivered to either "the judge or clerk of the court."[17] Once an indictment is presented, jurisdiction vests with the trial court.[18] The fact that an indictment is later lost, mislaid or destroyed does not divest the trial court of jurisdiction.[19]

In this case, the evidence shows the grand jury returned an indictment that named Natalie Gale as the victim.[20] This indictment was apparently delivered to the court clerk at the same time the indictment in cause number 112 was delivered,

as evidenced by the file stamps on the indictments.[21] According to the purported original, the indictment was given cause number F–94–0113–E. Testimony at the hearing on the motion to substitute indictment established that the purported original was the original indictment.[22] The fact that a signed indictment features an original file stamp of the district clerk's office is strong evidence that a returned indictment was "presented" to the court clerk within the meaning of Article 20.21. Because the purported original indictment bears an original file stamp, that fact convincingly shows the presentment requirement was satisfied. Although the appellant never asked the trial court to make a finding on the record with respect to presentment, the trial court could have reasonably concluded that the substituted indictment had been properly presented.[23]

### "Lost, Mislaid, Mutilated, or Obliterated"

■ Now turning to the issue before us, we conclude Article 21.25 is applicable. The statute allows for substitution when an indictment has been lost, mislaid, muti-

16. *See* Tex.Code Crim. Proc. Ann. art. 20.21(Vernon 2005) ("When an indictment is ready to be presented, the grand jury shall through their foreman, deliver the indictment to the judge or clerk of the court.").

17. *Id.*

18. Tex. Const. art. V, § 12.

19. *See Carrillo v. State*, 2 S.W.3d 275, 278 (Tex.Crim.App.1999) (holding that a lost indictment does "not divest the court of jurisdiction. . . .").

20. The court of appeals acknowledged that an indictment naming Natalie Gale as the victim was returned by the grand jury. *Dotson*, 190 S.W.3d at 785.

21. All copies of both the indictment naming Natalie Gale and the indictment naming Tracy Carlton that were introduced into evidence

at the hearing were file stamped on January 27, 1994 at either 2:09 p.m. or 2:10 p.m.

22. The purported original indictment bears an original file stamp, as Henry's and Carreathers's testimony established.

23. The appellant did not object to a lack of presentment during the hearing on the motion to substitute indictment and did not ask for a specific fact finding. *Cf. State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000) (in context of pretrial hearings, "when the trial court fails to file findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record.").

lated or obliterated. The State contends that the purported original indictment was lost or mislaid because at some point after it was duly presented to the district clerk, it was inexplicably omitted from the clerk's file due to a clerical error. We agree.

Evidence from the hearing supports this inference. The assistant district attorney who handled the plea process at the appellant's trial testified that she prosecuted the appellant for the involuntary manslaughter of two victims. The appellant's trial counsel testified that he represented the appellant with the understanding that the appellant was prosecuted for two separate offenses of involuntary manslaughter. Also, the substituted indictment is an apparent duplicate original indictment that charges the appellant with the involuntary manslaughter of Natalie Gale. Furthermore, the State produced copies of the indictments that were in the possession of both the appellant's trial counsel and the Denton County Probation Department as well as copies from its own file. The copies of the indictments contained in all these various files indicate that the grand jury charged the appellant with the involuntary manslaughter of Tracy Carlton in cause number 112 and the involuntary manslaughter of Natalie Gale in cause number 113.

Based on the evidence, it appears that the filed indictment is the anomaly. The grand jury returned two indictments that charged the appellant with two separate offenses of involuntary manslaughter, and these distinct indictments were duly presented to the district clerk. All parties involved were aware that the appellant faced prosecution for two separate charges. However, prior to the substitution, the clerk's record mistakenly failed to reflect that the appellant was charged in cause number 113 with an offense against Natalie Gale. Therefore, it was appropriate for the trial court to conclude that a clerical error occurred when the indictments were taken to the district clerk to be filed that prevented the clerk's record in cause number 113 from accurately reflecting that the appellant was charged in that cause with the offense against Natalie Gale. The trial court could have concluded that the original indictment was mislaid as a result of a clerical error when it was not filed by the clerk's office. Accordingly, Article 21.25 is applicable to this case because the statute allows for substitution when an indictment is mislaid. The trial court appropriately substituted the indictment in cause number 113.[24]

## CONCLUSION

We hold that the trial court did not err by applying Article 21.25 to remedy this situation. The original indictment in cause number 113, after return and presentment by the grand jury, was mislaid and not placed in the clerk's file due to clerical error. This error is appropriately rectified by replacing the filed indictment with the original indictment as returned by the grand jury, as Article 21.25 allows. Accordingly, we reverse the court of appeals'

---

**24.** Though the substitution occurred post-conviction, precedent apparently permits this. See Harwood v. State, 16 Tex. Ct.App. 416 (1884) (authorizing the substitution of a lost indictment after conviction); Turner v. State, 16 Tex. Ct.App. 318 (1884) (implying that an indictment may be substituted after conviction and judgment); Schultz v. State, 15 Tex. Ct.App. 258 (1883) (adopting the Supreme Court of Alabama's reasoning that an indict-

ment may be substituted even after the rendition of judgment); see also Glover v. State, 740 S.W.2d 94, 97 (Tex.App.-Dallas 1987, no pet.) (citing Harwood, Turner, and Schultz for the proposition that a lost or destroyed indictment may be substituted post-conviction). The appellant does not specifically challenge the substitution in this respect, and, therefore, we do not address it further.

judgment as it pertains to cause number 113, and we remand to the court of appeals to consider the appellant's remaining points of error in that cause.