COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-03-463-CR

 

 

LARRY DON DOTSON                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 367TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                     MEMORANDUM OPINION[1]
ON REMAND


 

                                              ------------








In 2003, Appellant Larry Don Dotson appealed from
the revocation of community supervision for two involuntary manslaughter
convictions resulting from the same car wreck. 
Appellant brought  thirteen points
on appeal, arguing that the trial court erred by substituting the indictment
upon revocation, improperly admitting certain State=s
exhibits over proper objection, improperly ordering the sentences to be served
consecutively, and accepting an involuntary plea.  This court affirmed the trial court=s
judgment in cause number 2-03-462-CR, but, because we held that the trial court
improperly substituted the indictment in cause number 2-03-463-CR, this case,
we sustained Appellant=s second and third points,
reversed the trial court=s judgment, and ordered the
indictment dismissed.  On the State=s
petition for discretionary review, the Texas Court of Criminal Appeals
concluded that article 21.25 of the code of criminal procedure authorized the
substitution of the indictment, reversed our judgment, and remanded this case
for our consideration of the remaining points.[2]  Because we hold that the trial court abused
its discretion by ordering the sentences to be served consecutively, we delete
the cumulation order from the trial court=s
judgment and affirm the trial court=s
judgment as modified.

Background Facts








In June 1994, Appellant pled guilty to two counts
of involuntary manslaughter, each filed in a different case.  The pleas were set at the same time on the
same date, 1:30 p.m., June 9, 1994.  The
trial court found Appellant guilty of both counts and sentenced him to ten
years=
confinement in the Institutional Division of the Texas Department of Criminal
Justice on each count.  The trial court
suspended imposition of the two sentences and placed Appellant on community
supervision for ten years on each count. 
Both the terms of community supervision and the jail terms that were a
condition of community supervision were ordered to be served concurrently.  In March 2003, the State filed a motion to
revoke in each case. After a consolidated hearing, the trial court revoked
Appellant=s community supervision and
imposed the ten-year sentences, ordering that they run consecutively.  Appellant timely appealed.

Trial Court Had
Jurisdiction to Substitute Indictment

In his first point, Appellant contends that the
trial court had no jurisdiction to substitute the indictment without evidence
of presentment.  Because the Texas Court
of Criminal Appeals has already concluded that the indictment was presented to
the trial court and that the trial court had jurisdiction,[3]
we overrule Appellant=s first point. 








In his twelfth point, Appellant argues that the
trial court erred by refusing to allow him to withdraw his plea in this case
after the trial court granted the State=s motion
to substitute the indictment because the substituted indictment did not exist
at the time he entered his plea.  For the
reasons set out above and  in the opinion
of the Texas Court of Criminal Appeals, we overrule Appellant=s
twelfth point.

Copies of Indictments
Were Admissible

In his fourth and fifth points, Appellant argues
that the trial court improperly admitted State=s
Exhibits 1 and 2,  which were the State=s copies
of the indictments in each case, because they were hearsay and not the best
evidence.  The two exhibits were admitted
through the testimony of Assistant District Attorney Paige McCormick.  She stated that she was the prosecutor who
had handled these two cases and that the indictments are kept as part of the
State=s file
in each case.  Copies of indictments are
routinely kept by the district attorney=s office
as part of the file relating to each criminal case.  McCormick properly laid the predicate for
admitting these documents as business records. 
Consequently, applying an abuse of discretion standard,[4]
we hold that each of the exhibits was properly admitted as a business record
under rule 803(6).[5]  








The
original indictments are public records and would have been admissible under
rule 803(8).[6]
The fact that the exhibits were copies of the indictments does not render them
inadmissible.  Under rule 1002, when a
party seeks to prove the contents of a writing, the original writing is
required except as otherwise provided by the rules of evidence.[7]  Under rule 1003, A[a]
duplicate is admissible to the same extent as an original unless (1) a question
is raised as to the authenticity of the original or (2) in the circumstances it
would be unfair to admit the duplicate in lieu of the original.@[8]  

As the
Texas Court of Criminal Appeals has explained, 
production of the original document depends on the circumstances of each
case, the only requirement being that Aall
reasonable avenues of search should be explored to the extent that reasonable
diligence under the circumstances would dictate.@[9]  A copy should be admitted where Aa
reasonable effort has been made to obtain the original and there is no
suspicion that the copy might differ from the original.@[10] 








State=s
Exhibits 1 and 2 were offered to prove the contents of the original indictments
because the original indictment in this case was lost.  Appellant does not contend that the copies
were not accurate or that they did not exactly replicate the original
indictments.  We therefore overrule
Appellant=s fourth and fifth points.

In his
sixth point, Appellant contends that the trial court improperly admitted State=s
Exhibits 5 and 6, copies of the indictments that were given to the probation
department, because they were not the best evidence.  For the reasons expressed above, we also
overrule this point.

In his
tenth point, Appellant contends that the trial court improperly admitted State=s
Exhibits 3 and 4, copies of the indictments found in Appellant=s former
defense counsel=s case file, because they were
not the best evidence.  Appellant neither
argued this point nor cited any authority for it.  We therefore overrule his tenth point as
inadequately briefed.[11]

In his
seventh, eighth, and ninth points, Appellant argues that State=s
Exhibits 3 and 4 were improperly admitted in violation of article 38.23, Texas
Rule of Evidence 503, and his rights under the Fourth, Fifth, Sixth, and
Fourteenth Amendments to the Constitution of the United States and Article 1,
Sections 9, 10, and 19 of the Texas Constitution.  








The
attorney who represented Appellant at the original pleas had kept a copy of the
indictment in each case.  He testified to
this fact and gave the prosecutor access to the file, which was in storage.  Assistant District Attorney Kristin Kidd
testified that she retrieved the indictments from storage, made copies, and
returned the indictments to the file. 
She stated that she did not look at any of the other papers in the file.

The
attorney-client privilege protects confidential communications between the
client and attorney.[12]  The indictment that a grand jury returns is
not a confidential communication between the client and the attorney, nor is a
copy thereof.  We therefore overrule
Appellant=s seventh, eighth, and ninth
points.

Cumulation of Sentences








In his
eleventh point, Appellant contends that the sentences were improperly
cumulated. Section 3.03 of the penal code in effect at the time of Appellant=s
offenses required sentences in cases such as those for which Appellant was
convicted, involuntary manslaughter, to run concurrently when a defendant was
found guilty of more than one offense arising out of the same criminal episode
prosecuted in a single action.[13]  It is clear that the offenses arose from the
same criminal episode; the only issue is whether the State prosecuted them in a
single action or separately.  AA single
criminal action@ refers to the presentation of Aallegations
and evidence of more than one offense arising out of the same criminal episode
. . . in a single trial or plea proceeding, whether pursuant to one charging
instrument or several.@[14]

Evidence
in the appellate record is conflicting on the issue of whether the cases were
prosecuted in a single action.  Assistant
District Attorney McCormick testified that she was the prosecutor who handled
the two cases against Appellant and that the district attorney=s files
showed that both cases were disposed of pursuant to a plea bargain.  She testified that the notes in the file
indicated that the pleas were handled as two separate proceedings in that the
pleas were handled consecutively, one beginning after the first had been
completed.  She further testified that
she had no personal recollection of the proceeding.  

The
parents of one of the complainants testified that they understood that the
sentences could be cumulated.  The
father, John Gale, testified that he was in court during the plea proceedings
and that the two pleas were heard separately. 
He also testified, however, that, in regard to the plea proceedings, AThey
weren=t
separate.  They were all together.@  








Appellant=s
counsel at the pleas testified that he had no independent recollection of the
plea hearings and could not say whether the pleas were conducted together or
separately.  The plea bargain agreements
specifically note that there was Ano
agreement whether concurrent or consecutive@
and  Ano
agreement for consecutive or concurrent,@
respectively, as to the 120 days=
confinement assessed as a condition of probation.  The judgment in each case, however, provides
that A[t]he
defendant is to serve 120 days in the Denton County Jail beginning June 9,
1994.@  That is, both the terms of community
supervision and the jail terms that were a condition of community supervision
were ordered to be served concurrently. 
A document from the sheriff=s
department also states that the two 120-day terms were served concurrently.

We have
no reporter=s record because the court
reporter did not preserve it.  The
parties do not agree on what occurred at the original pleas. Neither the State
nor Appellant waived the making of a record and, indeed, the court reporter did
make a record.  She simply did not
preserve it.  

In his
supplemental brief, Appellant raises a thirteenth point, arguing that he is
entitled to a new trial under appellate rule 34.6(f) because the reporter=s record
of the original plea is lost.  Rule
34.6(f) of the rules of appellate procedure provides,

 








(f)     Reporter's Record Lost or Destroyed.  An appellant is entitled to a new trial under
the following circumstances:

 

(1)    if the appellant has timely requested a
reporter's record;

 

(2)    if, without the appellant's fault, a
significant exhibit or a significant portion of the court reporter's notes and
records has been lost or destroyed orCif the proceedings were electronically recordedCa significant portion of
the recording has been lost or destroyed or is inaudible;

 

(3)    if the lost, destroyed, or inaudible portion
of the reporter's record, or the lost or destroyed exhibit, is necessary to the
appeal's resolution; and

 

(4)    if the lost, destroyed or
inaudible portion of the reporter's record cannot be replaced by agreement of
the parties, or the lost or destroyed exhibit cannot be replaced either by
agreement of the parties or with a copy determined by the trial court to
accurately duplicate with reasonable certainty the original exhibit.[15] 

Rule 13.6 of the appellate rules of procedure
provides,

 

When a defendant is
convicted and sentenced, or is granted deferred adjudication for a felony other
than a state jail felony, and does not appeal, the court reporter mustCwithin 20 days after the
time to perfect the appeal has expiredCfile the untranscribed notes or the original
recording of the proceeding with the trial court clerk. The trial court clerk
need not retain the notes beyond 15 years of their filing date.[16]

 








The
Texas Court of Criminal Appeals has explained that the inquiry whether the
missing record is necessary is in itself a harm analysis.[17]  The appellant has the burden of establishing
that the missing portion of the record is Anecessary
to the appeal=s resolution.@[18]  








On
original submission, this court abated the appeals to allow the trial court to
determine why the court reporter had failed to provide a record of the original
pleas although ordered to do so, whether the record was necessary to the
resolution of the appeals, and whether the State and Appellant could agree on a
complete reporter=s record of the lost or
destroyed or inaudible portion.  At the
abatement hearing, the reporter testified that she was no longer a court
reporter.  She had no recollection of
taking Appellant=s Aplea
hearing@ and
testified that she did not produce a record or notes because A[e]verything
has been destroyed.  I have no records of
court reporting whatsoever at this time.@          She
explained that when she left court reporting, she stored her notes in an A[a]ttic,
garage, closets@ instead of depositing them with
the Denton County District Clerk=s
Office.  She said that she had Aa bunch
of boxes.@ 
She testified that she kept the notes until approximately two years
before the abatement hearing.  At that
time, she got a letter from the official court reporter of the trial court concerning
the missing record.  When she went to the
storage facility, she discovered that the notes were Atrashed@Cthere
was water damage, the ink was smeared, and she could not read them.  She then destroyed them.  

She also
found what might have been a tape recording of the plea hearings.  Her tapes had neither names nor cause numbers
on them, only dates.  After trying
without success to play on three different tape recorders the tape labeled with
the same date as the date the pleas were taken, she also destroyed the tape,
instead of turning it over to the official court reporter.  Although she intended to respond to the
official court reporter, she did not. 
The former court reporter claimed that she destroyed the notes and tapes
before she received this court=s order
regarding them.  

Next,
she testified that she did not tape record all the plea proceedings during that
time and that it was possible that no taped recording of the pleas had ever
existed.  Again, no one waived the making
of a record, and the court reporter did not testify that no reporter=s notes
had ever existed.








The
trial court found that no portion of the reporter=s notes,
records, or electronic recordings of the original plea hearings still existed
on the date of the abatement hearing. 
The trial judge stated that she was unable to make a finding concerning
whether the missing record is necessary to the resolution of the appeal because
she had not read the briefs and did not have sufficient information to make the
finding Abut
w[ould] leave that finding to the Court of Appeals.@  The trial court also found, and both the
State and the defense agreed, that the parties cannot agree on a complete
reporter=s record
Aof the
lost or stored or inaudible portion.@  

We hold
that the record clearly reveals that neither Appellant nor the State bears any
fault or responsibility for the destruction of the record.  We also hold that the record of the pleas is
necessary to determine whether the original pleas were taken in separate
proceedings or in a unitary 
proceeding.  We must now determine
whether Appellant timely requested the record for purposes of this appeal.[19]  








The
State argues that Appellant was obligated to request the reporter=s record
and offer it at the hearing on the State=s motion
to revoke.  Yet the State does not direct
us to any portion of the record that indicates that Appellant was aware of the
State=s intent
to request that the sentences be stacked sufficiently in advance of the hearing
to request the record.  Clearly, however,
the State was aware of its own intent in advance of the hearing.  Appellant was aware that the original plea
hearing was necessary to a determination of the propriety of the stacking order
when he designated the record for appeal. 
So, also, was the State.  

This
court requested the reporter=s record
in an attempt to determine whether the sentences after revocation were properly
stacked.  In response we received a copy
of a letter that Lisa C. Williams, official court reporter for the 367th
District Court, sent to Appellant=s lawyer
on November 29, 2004, during the pendency of this appeal before remand:

Dear [Appellant=s appellate counsel]:

 

This letter is in
response to your November 4, 2004 Appellant=s Request for Supplementation of the Record(s) in
the above‑referenced causes of action. 
The original pleas in these two cases were reported by Gwen
Stricklen.  Ms. Stricklen is no longer
reporting.  Prior to the revocation
hearing in these two cases, the District Attorney=s Office did request that
the original plea hearing be transcribed. 
At that time I conducted a diligent search for Ms. Stricklen=s original stenographic
notes from the hearing.  These notes are
maintained by Denton County Records Management, but only to the extent that Ms.
Stricklen preserved them.  After review
of their archive, I was unable to locate notes from this particular matter. 

 

The
prosecutor who represented the State at the abatement hearing made the
following statement to the trial court:








At this point I think I
would like to just state for the record that I have spoken to the [official]
court reporter, and I have personal recollection of the fact that I gotCshe sent me a copy of the
letters that she sent to the Court of Appeals where she explained to the court
that she had contacted the [former] court reporter and asked her about whether
or not she could find any notes.  I don=t recall ever seeing any
response from the [former] court reporter or any indication that the [former]
court reporter had responded to her.

 

The court reporter for
this court represented to me . . . and I believe she also represented to the
Court of Appeals that she searched through whatever records were maintained
from this court from the court reporter for the years involved in this plea and
that she was unable to find any records pertaining to this particular
proceeding in the notes that were in storage.

 

And I don=t have anything else for
the record other than that. 

 

The
State now argues that Appellant cannot supplement the record with the reporter=s record
from the original plea because Appellant did not offer it into evidence at the
revocation hearing.  Yet the State is
aware, and was apparently aware before the revocation hearing, that the
reporter=s record
had been destroyed.  We decline the State=s
invitation to place an impossible burden on Appellant.  Based on the above, we hold that Appellant
timely requested the nonexistent record.

The
State argues that the appellate record supports a finding that Appellant was
not tried in a single criminal action and that the cumulation of his sentences
was proper, pointing out that there were two clerks=
records, two indictments, two guilty pleas, two judgments granting probation,
two motions to revoke probation, and two judgments revoking probation.  








There
was, however, only a single criminal act. 
The pleas were set at the same time on the same date, 1:30 p.m., June 9,
1994.  Both the terms of community
supervision and the jail terms that were a condition of community supervision
were ordered to be served concurrently.

No one
who participated in the pleas had any independent recollection of the
proceeding.  The prosecutor said that her
notes indicated two separate proceedings in that the pleas were handled
consecutively, one beginning after the first had been completed.  A parent of one of the complainants testified
that the hearings were not separate, AThey
were all together.@ 
If the trial court called each case separately and dealt with each case
individually, even though one case was called immediately after the other, then
the cases were not prosecuted in a single action, and sentences could be
consecutive.[20]  But if the pleas were taken consecutively in
a single hearing, then they were not taken in separate proceedings.[21]  








Given
all the conflicting evidence, the destruction of the record necessary to
determine whether the original plea proceeding authorized the trial court=s later
stacking order, and the inability of the parties to agree on what the missing
record would reveal, we cannot determine whether the cases were called
separately or in a single hearing.  And,
importantly, neither could the trial court at the time of sentencing.  Because the evidence before the trial court
at the time of sentencing was, at best, a conflicting collection of guesses and
speculation, we must hold that the trial court abused its discretion by
stacking the sentences.[22]  We therefore sustain Appellant=s eleventh
point.  Because we have managed to
resolve Appellant=s eleventh point without the
destroyed reporter=s record and notes, we overrule
his thirteenth point.  

Conclusion

Having sustained
Appellant=s eleventh point, we
delete the cumulation order in the trial court=s judgment and affirm the
trial court=s judgment as modified.

 

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL B:   DAUPHINOT, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
July 17, 2008











[1]See Tex. R. App. P. 47.4.





[2]State v. Dotson,
224 S.W.3d 199, 205B06 (Tex. Crim. App. 2007); see also Tex. Code Crim. Proc. Ann. art. 21.25
(Vernon 1989).





[3]Dotson, 224
S.W.3d at 204.





[4]See Coffin v. State, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994).





[5]See Tex. R. Evid. 803(6).





[6]See Tex. R. Evid. 803(8).





[7]Tex. R. Evid. 1002.





[8]Tex. R. Evid. 1003.





[9]Anderson v. State, 621 S.W.2d 805, 809 (Tex. Crim. App. 1981). 





[10]Id.





[11]See Tex. R. App. P. 38.1(h); Tong v.
State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), cert. denied, 532
U.S. 1053 (2001).





[12]Austin v. State,
934 S.W.2d 672, 673 (Tex. Crim. App. 1996).





[13]See Act
effective September 1, 1994, 73rd Leg., R.S., ch. 900, art. 1, '1.01,
1993 Tex. Gen. Laws 3586, 3592 (amended 1995, 1997, 2005, and 2007) (current
version at Tex. Penal Code Ann. ' 3.03
(Vernon Supp. 2007).





[14]LaPorte v. State, 840 S.W.2d 412, 415 (Tex. Crim. App. 1992).





[15]Tex. R. App. P. 34.6(f).





[16]Tex. R. App. P. 13.6.





[17]Issac v. State, 989 S.W.2d 754, 757
(Tex. Crim. App. 1999). 





[18]See  id.; see also Alvear v. State, 25
S.W.3d 241, 245 (Tex. App.CSan Antonio 2000, no pet.).





[19]See Tex. R. App. P. 34.6(f)(1).





[20]See Ex parte Pharr, 897 S.W.2d 795, 796 (Tex. Crim. App. 1995).





[21]See LaPorte,
840 S.W.2d at 415.





[22]See Polanco v. State, 914 S.W.2d 269 & 272 n.2 (Tex. App.CBeaumont 1996, pets. ref=d) (deleting cumulation order when there was evidence
that guilty plea proceedings were intertwined); Smith v. State, 753
S.W.2d 456, 458 (Tex. App.CHouston [14th Dist.] 1988, no pet.) (holding trial
court erred by cumulating sentences at probation revocation hearing when the
two offenses arose out of same criminal episode).