# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH


### NO. 2-03-463-CR

LARRY DON DOTSON                                                          APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

------------

## FROM THE 367ᵀᴴ DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1] ON REMAND

------------

In 2003, Appellant Larry Don Dotson appealed from the revocation of community supervision for two involuntary manslaughter convictions resulting from the same car wreck. Appellant brought thirteen points on appeal, arguing that the trial court erred by substituting the indictment upon revocation, improperly admitting certain State's exhibits over proper objection, improperly

---

[1] *See* TEX. R. APP. P. 47.4.

ordering the sentences to be served consecutively, and accepting an involuntary plea. This court affirmed the trial court's judgment in cause number 2-03-462-CR, but, because we held that the trial court improperly substituted the indictment in cause number 2-03-463-CR, this case, we sustained Appellant's second and third points, reversed the trial court's judgment, and ordered the indictment dismissed. On the State's petition for discretionary review, the Texas Court of Criminal Appeals concluded that article 21.25 of the code of criminal procedure authorized the substitution of the indictment, reversed our judgment, and remanded this case for our consideration of the remaining points.[2] Because we hold that the trial court abused its discretion by ordering the sentences to be served consecutively, we delete the cumulation order from the trial court's judgment and affirm the trial court's judgment as modified.

## BACKGROUND FACTS

In June 1994, Appellant pled guilty to two counts of involuntary manslaughter, each filed in a different case. The pleas were set at the same time on the same date, 1:30 p.m., June 9, 1994. The trial court found Appellant guilty of both counts and sentenced him to ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice on each

---

[2] *State v. Dotson*, 224 S.W.3d 199, 205–06 (Tex. Crim. App. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 21.25 (Vernon 1989).

2

count.  The trial court suspended imposition of the two sentences and placed Appellant on community supervision for ten years on each count.  Both the terms of community supervision and the jail terms that were a condition of community supervision were ordered to be served concurrently.  In March 2003, the State filed a motion to revoke in each case. After a consolidated hearing, the trial court revoked Appellant's community supervision and imposed the ten-year sentences, ordering that they run consecutively.  Appellant timely appealed.

### TRIAL COURT HAD JURISDICTION TO SUBSTITUTE INDICTMENT

In his first point, Appellant contends that the trial court had no jurisdiction to substitute the indictment without evidence of presentment.  Because the Texas Court of Criminal Appeals has already concluded that the indictment was presented to the trial court and that the trial court had jurisdiction,[3] we overrule Appellant's first point.

In his twelfth point, Appellant argues that the trial court erred by refusing to allow him to withdraw his plea in this case after the trial court granted the State's motion to substitute the indictment because the substituted indictment did not exist at the time he entered his plea.  For the reasons set out above and

---

[3] *Dotson*, 224 S.W.3d at 204.

3

in the opinion of the Texas Court of Criminal Appeals, we overrule Appellant's twelfth point.

### COPIES OF INDICTMENTS WERE ADMISSIBLE

In his fourth and fifth points, Appellant argues that the trial court improperly admitted State's Exhibits 1 and 2, which were the State's copies of the indictments in each case, because they were hearsay and not the best evidence. The two exhibits were admitted through the testimony of Assistant District Attorney Paige McCormick. She stated that she was the prosecutor who had handled these two cases and that the indictments are kept as part of the State's file in each case. Copies of indictments are routinely kept by the district attorney's office as part of the file relating to each criminal case. McCormick properly laid the predicate for admitting these documents as business records. Consequently, applying an abuse of discretion standard,[4] we hold that each of the exhibits was properly admitted as a business record under rule 803(6).[5]

The original indictments are public records and would have been admissible under rule 803(8).[6] The fact that the exhibits were copies of the

---

[4] *See Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994).

[5] *See* TEX. R. EVID. 803(6).

[6] *See* TEX. R. EVID. 803(8).

4

indictments does not render them inadmissible. Under rule 1002, when a party seeks to prove the contents of a writing, the original writing is required except as otherwise provided by the rules of evidence.[7] Under rule 1003, "[a] duplicate is admissible to the same extent as an original unless (1) a question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."[8]

As the Texas Court of Criminal Appeals has explained, production of the original document depends on the circumstances of each case, the only requirement being that "all reasonable avenues of search should be explored to the extent that reasonable diligence under the circumstances would dictate."[9] A copy should be admitted where "a reasonable effort has been made to obtain the original and there is no suspicion that the copy might differ from the original."[10]

State's Exhibits 1 and 2 were offered to prove the contents of the original indictments because the original indictment in this case was lost. Appellant does not contend that the copies were not accurate or that they did not exactly

---

[7] TEX. R. EVID. 1002.

[8] TEX. R. EVID. 1003.

[9] *Anderson v. State*, 621 S.W.2d 805, 809 (Tex. Crim. App. 1981).

[10] *Id.*

replicate the original indictments. We therefore overrule Appellant's fourth and fifth points.

In his sixth point, Appellant contends that the trial court improperly admitted State's Exhibits 5 and 6, copies of the indictments that were given to the probation department, because they were not the best evidence. For the reasons expressed above, we also overrule this point.

In his tenth point, Appellant contends that the trial court improperly admitted State's Exhibits 3 and 4, copies of the indictments found in Appellant's former defense counsel's case file, because they were not the best evidence. Appellant neither argued this point nor cited any authority for it. We therefore overrule his tenth point as inadequately briefed.[11]

In his seventh, eighth, and ninth points, Appellant argues that State's Exhibits 3 and 4 were improperly admitted in violation of article 38.23, Texas Rule of Evidence 503, and his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States and Article 1, Sections 9, 10, and 19 of the Texas Constitution.

The attorney who represented Appellant at the original pleas had kept a copy of the indictment in each case. He testified to this fact and gave the

---

[11] *See* TEX. R. APP. P. 38.1(h); *Tong v. State,* 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), *cert. denied,* 532 U.S. 1053 (2001).

6

prosecutor access to the file, which was in storage. Assistant District Attorney Kristin Kidd testified that she retrieved the indictments from storage, made copies, and returned the indictments to the file. She stated that she did not look at any of the other papers in the file.

The attorney-client privilege protects confidential communications between the client and attorney.[12] The indictment that a grand jury returns is not a confidential communication between the client and the attorney, nor is a copy thereof. We therefore overrule Appellant's seventh, eighth, and ninth points.

## CUMULATION OF SENTENCES

In his eleventh point, Appellant contends that the sentences were improperly cumulated. Section 3.03 of the penal code in effect at the time of Appellant's offenses required sentences in cases such as those for which Appellant was convicted, involuntary manslaughter, to run concurrently when a defendant was found guilty of more than one offense arising out of the same criminal episode prosecuted in a single action.[13] It is clear that the offenses arose from the same criminal episode; the only issue is whether the State

---

[12] *Austin v. State*, 934 S.W.2d 672, 673 (Tex. Crim. App. 1996).

[13] *See* Act effective September 1, 1994, 73rd Leg., R.S., ch. 900, art. 1, § 1.01, 1993 Tex. Gen. Laws 3586, 3592 (amended 1995, 1997, 2005, and 2007) (current version at TEX. PENAL CODE ANN. § 3.03 (Vernon Supp. 2007).

7

prosecuted them in a single action or separately. "A single criminal action" refers to the presentation of "allegations and evidence of more than one offense arising out of the same criminal episode . . . in a single trial or plea proceeding, whether pursuant to one charging instrument or several."[14]

Evidence in the appellate record is conflicting on the issue of whether the cases were prosecuted in a single action. Assistant District Attorney McCormick testified that she was the prosecutor who handled the two cases against Appellant and that the district attorney's files showed that both cases were disposed of pursuant to a plea bargain. She testified that the notes in the file indicated that the pleas were handled as two separate proceedings in that the pleas were handled consecutively, one beginning after the first had been completed. She further testified that she had no personal recollection of the proceeding.

The parents of one of the complainants testified that they understood that the sentences could be cumulated. The father, John Gale, testified that he was in court during the plea proceedings and that the two pleas were heard separately. He also testified, however, that, in regard to the plea proceedings, "They weren't separate. They were all together."

---

[14] *LaPorte v. State*, 840 S.W.2d 412, 415 (Tex. Crim. App. 1992).

Appellant's counsel at the pleas testified that he had no independent recollection of the plea hearings and could not say whether the pleas were conducted together or separately. The plea bargain agreements specifically note that there was "no agreement whether concurrent or consecutive" and "no agreement for consecutive or concurrent," respectively, as to the 120 days' confinement assessed as a condition of probation. The judgment in each case, however, provides that "[t]he defendant is to serve 120 days in the Denton County Jail beginning June 9, 1994." That is, both the terms of community supervision and the jail terms that were a condition of community supervision were ordered to be served concurrently. A document from the sheriff's department also states that the two 120-day terms were served concurrently.

We have no reporter's record because the court reporter did not preserve it. The parties do not agree on what occurred at the original pleas. Neither the State nor Appellant waived the making of a record and, indeed, the court reporter did make a record. She simply did not preserve it.

In his supplemental brief, Appellant raises a thirteenth point, arguing that he is entitled to a new trial under appellate rule 34.6(f) because the reporter's record of the original plea is lost. Rule 34.6(f) of the rules of appellate procedure provides,

9

(f)    Reporter's Record Lost or Destroyed.  An appellant is entitled to a new trial under the following circumstances:

(1)    if the appellant has timely requested a reporter's record;

(2)    if, without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed or — if the proceedings were electronically recorded — a significant portion of the recording has been lost or destroyed or is inaudible;

(3)    if the lost, destroyed, or inaudible portion of the reporter's record, or the lost or destroyed exhibit, is necessary to the appeal's resolution; and

(4)    if the lost, destroyed or inaudible portion of the reporter's record cannot be replaced by agreement of the parties, or the lost or destroyed exhibit cannot be replaced either by agreement of the parties or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit.[15]

Rule 13.6 of the appellate rules of procedure provides,

When a defendant is convicted and sentenced, or is granted deferred adjudication for a felony other than a state jail felony, and does not appeal, the court reporter must — within 20 days after the time to perfect the appeal has expired — file the untranscribed notes or the original recording of the proceeding with the trial court clerk. The trial court clerk need not retain the notes beyond 15 years of their filing date.[16]

The Texas Court of Criminal Appeals has explained that the inquiry whether the

_____

[15] TEX. R. APP. P. 34.6(f).

[16] TEX. R. APP. P. 13.6.

10

missing record is necessary is in itself a harm analysis.[17] The appellant has the burden of establishing that the missing portion of the record is "necessary to the appeal's resolution."[18]

On original submission, this court abated the appeals to allow the trial court to determine why the court reporter had failed to provide a record of the original pleas although ordered to do so, whether the record was necessary to the resolution of the appeals, and whether the State and Appellant could agree on a complete reporter's record of the lost or destroyed or inaudible portion. At the abatement hearing, the reporter testified that she was no longer a court reporter. She had no recollection of taking Appellant's "plea hearing" and testified that she did not produce a record or notes because "[e]verything has been destroyed. I have no records of court reporting whatsoever at this time."

She explained that when she left court reporting, she stored her notes in an "[a]ttic, garage, closets" instead of depositing them with the Denton County District Clerk's Office. She said that she had "a bunch of boxes." She testified that she kept the notes until approximately two years before the abatement hearing. At that time, she got a letter from the official court reporter of the trial

---

[17] *Issac v. State*, 989 S.W.2d 754, 757 (Tex. Crim. App. 1999).

[18] *See id.*; *see also Alvear v. State*, 25 S.W.3d 241, 245 (Tex. App.—San Antonio 2000, no pet.).

11

court concerning the missing record. When she went to the storage facility, she discovered that the notes were "trashed"—there was water damage, the ink was smeared, and she could not read them. She then destroyed them.

She also found what might have been a tape recording of the plea hearings. Her tapes had neither names nor cause numbers on them, only dates. After trying without success to play on three different tape recorders the tape labeled with the same date as the date the pleas were taken, she also destroyed the tape, instead of turning it over to the official court reporter. Although she intended to respond to the official court reporter, she did not. The former court reporter claimed that she destroyed the notes and tapes before she received this court's order regarding them.

Next, she testified that she did not tape record all the plea proceedings during that time and that it was possible that no taped recording of the pleas had ever existed. Again, no one waived the making of a record, and the court reporter did not testify that no reporter's notes had ever existed.

The trial court found that no portion of the reporter's notes, records, or electronic recordings of the original plea hearings still existed on the date of the abatement hearing. The trial judge stated that she was unable to make a finding concerning whether the missing record is necessary to the resolution of the appeal because she had not read the briefs and did not have sufficient

12

information to make the finding "but w[ould] leave that finding to the Court of Appeals." The trial court also found, and both the State and the defense agreed, that the parties cannot agree on a complete reporter's record "of the lost or stored or inaudible portion."

We hold that the record clearly reveals that neither Appellant nor the State bears any fault or responsibility for the destruction of the record. We also hold that the record of the pleas is necessary to determine whether the original pleas were taken in separate proceedings or in a unitary proceeding. We must now determine whether Appellant timely requested the record for purposes of this appeal.[19]

The State argues that Appellant was obligated to request the reporter's record and offer it at the hearing on the State's motion to revoke. Yet the State does not direct us to any portion of the record that indicates that Appellant was aware of the State's intent to request that the sentences be stacked sufficiently in advance of the hearing to request the record. Clearly, however, the State was aware of its own intent in advance of the hearing. Appellant was aware that the original plea hearing was necessary to a determination of the propriety of the stacking order when he designated the

---

[19] *See* TEX. R. APP. P. 34.6(f)(1).

record for appeal. So, also, was the State.

This court requested the reporter's record in an attempt to determine whether the sentences after revocation were properly stacked. In response we received a copy of a letter that Lisa C. Williams, official court reporter for the 367th District Court, sent to Appellant's lawyer on November 29, 2004, during the pendency of this appeal before remand:

Dear [Appellant's appellate counsel]:

This letter is in response to your November 4, 2004 Appellant's Request for Supplementation of the Record(s) in the above-referenced causes of action. The original pleas in these two cases were reported by Gwen Stricklen. Ms. Stricklen is no longer reporting. Prior to the revocation hearing in these two cases, the District Attorney's Office did request that the original plea hearing be transcribed. At that time I conducted a diligent search for Ms. Stricklen's original stenographic notes from the hearing. These notes are maintained by Denton County Records Management, but only to the extent that Ms. Stricklen preserved them. After review of their archive, I was unable to locate notes from this particular matter.

The prosecutor who represented the State at the abatement hearing made the following statement to the trial court:

At this point I think I would like to just state for the record that I have spoken to the [official] court reporter, and I have personal recollection of the fact that I got—she sent me a copy of the letters that she sent to the Court of Appeals where she explained to the court that she had contacted the [former] court reporter and asked her about whether or not she could find any notes. I don't recall ever seeing any response from the [former] court reporter or any indication that the [former] court reporter had

14

responded to her.

The court reporter for this court represented to me . . . and I believe she also represented to the Court of Appeals that she searched through whatever records were maintained from this court from the court reporter for the years involved in this plea and that she was unable to find any records pertaining to this particular proceeding in the notes that were in storage.

And I don't have anything else for the record other than that.

The State now argues that Appellant cannot supplement the record with the reporter's record from the original plea because Appellant did not offer it into evidence at the revocation hearing. Yet the State is aware, and was apparently aware before the revocation hearing, that the reporter's record had been destroyed. We decline the State's invitation to place an impossible burden on Appellant. Based on the above, we hold that Appellant timely requested the nonexistent record.

The State argues that the appellate record supports a finding that Appellant was not tried in a single criminal action and that the cumulation of his sentences was proper, pointing out that there were two clerks' records, two indictments, two guilty pleas, two judgments granting probation, two motions to revoke probation, and two judgments revoking probation.

There was, however, only a single criminal act. The pleas were set at the same time on the same date, 1:30 p.m., June 9, 1994. Both the terms of

15

community supervision and the jail terms that were a condition of community supervision were ordered to be served concurrently.

No one who participated in the pleas had any independent recollection of the proceeding. The prosecutor said that her notes indicated two separate proceedings in that the pleas were handled consecutively, one beginning after the first had been completed. A parent of one of the complainants testified that the hearings were not separate, "They were all together." If the trial court called each case separately and dealt with each case individually, even though one case was called immediately after the other, then the cases were not prosecuted in a single action, and sentences could be consecutive.[20] But if the pleas were taken consecutively in a single hearing, then they were not taken in separate proceedings.[21]

Given all the conflicting evidence, the destruction of the record necessary to determine whether the original plea proceeding authorized the trial court's later stacking order, and the inability of the parties to agree on what the missing record would reveal, we cannot determine whether the cases were called separately or in a single hearing. And, importantly, neither could the trial court at the time of sentencing. Because the evidence before the trial court at

---

[20]⬛ *See Ex parte Pharr*, 897 S.W.2d 795, 796 (Tex. Crim. App. 1995).

[21]⬛ *See LaPorte*, 840 S.W.2d at 415.

16

the time of sentencing was, at best, a conflicting collection of guesses and speculation, we must hold that the trial court abused its discretion by stacking the sentences.[22] We therefore sustain Appellant's eleventh point. Because we have managed to resolve Appellant's eleventh point without the destroyed reporter's record and notes, we overrule his thirteenth point.

## CONCLUSION

Having sustained Appellant's eleventh point, we delete the cumulation order in the trial court's judgment and affirm the trial court's judgment as modified.

LEE ANN DAUPHINOT
JUSTICE

PANEL B:   DAUPHINOT, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: July 17, 2008

---

[22] *See Polanco v. State*, 914 S.W.2d 269 & 272 n.2 (Tex. App.—Beaumont 1996, pets. ref'd) (deleting cumulation order when there was evidence that guilty plea proceedings were intertwined); *Smith v. State*, 753 S.W.2d 456, 458 (Tex. App.—Houston [14th Dist.] 1988, no pet.) (holding trial court erred by cumulating sentences at probation revocation hearing when the two offenses arose out of same criminal episode).

17