Jerry BROYLES *v.* STATE of Arkansas

CR 85-36

688 S.W.2d 290

Supreme Court of Arkansas
Opinion delivered April 29, 1985

458

*Jeff Duty,* for appellant.

*Steve Clark,* Att'y Gen., by: *Connie Griffin,* Asst. Att'y Gen., for appellee.

GEORGE ROSE SMITH, Justice. Tried without a jury, Broyles was convicted of DWI and other offenses. Aside from the punishment imposed, the court assessed costs of $302.25, which apparently included the "additional" costs of $250 mandated by Act 918 of 1983. Ark. Stat. Ann. § 75-2531 (Supp. 1983). The appeal comes to this court under Rule 29(1)(c).

The first of two arguments for reversal is that the State failed to prove beyond a reasonable doubt that Broyles was intoxicated within the statutory definition. § 75-2502 (a) (Supp. 1983). In a criminal case the standard for review is not whether the evidence eliminates a reasonable doubt but simply whether the finding of fact is supported by substantial evidence. *Gardner* v. *State,* 263 Ark. 739, 746, 569 S.W.2d 74 (1978), *cert. denied* 440 U.S. 911 (1979).

Officer McCain, who first stopped Broyles, testified that Broyles had weaved into the oncoming traffic lane several times and smelled of liquor when stopped. Broyles successfully fled in his car for a few minutes, but the officer who quickly found and arrested Broyles testified that he was stumbling and staggering, he smelled strongly of intoxicants, his eyes were bloodshot, and he had trouble walking. Broyles refused to take a breathalyzer test, though he did remark at the time: "Drunker than hell." He testified that he is an alcoholic but had not had even beer that day. He said that for a severe migraine headache he had taken medicine that was labeled 43% alcohol and also contained codeine. Even though he admitted having drunk the whole bottle instead of taking it by the tablespoonful, he said that would

have nothing to do with his driving. Upon the conflicting proof there was obviously substantial evidence to support the trial court's finding that Broyles was driving while intoxicated.

Second, it is argued that the statutory imposition of $250 in additional costs, especially the $75 of that amount that goes to the city or county, is not directly related to the cost of prosecution and must be regarded as a mandatory imposition of punishment rather than as an assessment of costs.

The statute provides that a person convicted of DWI shall pay, "as an additional cost," the sum of $250. § 75-2531. Of that amount $75 goes to the city or county of the court levying the additional cost. Half the remainder goes to support the Highway Safety Program. That program was established by the Omnibus DWI Act and has five enumerated objectives, every one of which relates to drunken driving. § 75-2514 (Supp. 1983). The other half of the remainder goes to the Alcohol and Drug Safety Fund and is to be used to support detoxification services and alcohol and drug abuse rehabilitation and treatment services. § 75-2531.

The decisions elsewhere are not unanimous in deciding to what extent the costs in a criminal case must be directly related to that particular prosecution. An Oklahoma court required a direct relationship between the expense of prosecution and the fixing of costs. *Ex Parte Coffelt,* 93 Okl. Cr. 343, 228 P.2d 199 (1951). Other courts take a less restrictive approach. In Virginia the court sustained the levy of a fixed amount after every conviction for a traffic offense, to help support the Division of Motor Vehicles in its central record-keeping and reporting. *Carter* v. *City of Norfolk,* 206 Va. 872, 147 S.E.2d 139 (1966). It was said: "The costs collected under Code § 14.1-200.1 therefore reimburse the State for expenses incurred by it as a result of prosecutions for traffic offenses." Quite similar to the case at bar was a Florida decision upholding a statute levying a fixed amount as costs in every case not of a civil nature, to be used for the support of the bureau of law enforcement. *State* v. *Young,* 238 So.2d 589 (Fla. 1970). The court reasoned:

It is not unreasonable that one who stands convicted of such an offense should be made to share in the improvement of the agencies that society has had to employ in defense against the very acts for which he has been convicted. We perceive here a direct relationship. . . .

Our own cases uphold the imposition of costs imposed without a precise relationship to the actual cost of the particular prosecution. In sustaining the assessment of a uniform fee for the prosecuting attorney in all cases we said: "These charges are not part of the punishment of the accused. Costs are awarded in order that the State may prosecute the guilty at their own expense." *Wellington* v. *State*, 52 Ark. 447, 12 S.W. 562 (1889). In a civil case we rejected a contention that the unused portion of advance costs had to be returned to the litigant rather than going into the general revenue to help defray the expenses of the courts. *Marshall* v. *Holland*, 168 Ark. 449, 270 S.W. 609 (1925). Again, in *McArthur* v. *Smallwood*, 225 Ark. 328, 281 S.W.2d 428 (1955), the court upheld a statute levying a fixed amount as costs in all cases, civil and criminal, to secure bonds issued for the constration of a building to house the Supreme Court, its clerk, its library, and the attorney general. From the opinion:

> The mere fact that there are no appeals to the Supreme Court in a substantial number of cases filed in the circuit, chancery and probate courts . . . is immaterial. The right of appeal is a valuable asset to any litigant and is available to all litigants. The mere fact that these rights may not be utilized in every case does not detract from their importance and there is no constitutional objection to levying costs to contribute to the expense of the maintenance of those rights.

Inasmuch as the State may prosecute guilty persons at their own expense, we perceive no good reason why the legislature may not also require drunken drivers to share in the cost of maintaining agencies that society has had to create to make its highways safe from the risks those drivers impose upon the innocent, and to attempt to rehabilitate

and treat those drivers. There is no specific contention by the appellant that the amount of costs allocated to those purposes exceeds the expenses incurred by the State to achieve the purposes. Even if such a contention were made there is nothing in the record to indicate that the amounts allocated are excessive. Statutes are presumed to be valid; so the party who alleges the invalidity of a statute has the burden of proving that claim. *Handy Dan Imp. Center* v. *Adams,* 276 Ark. 268, 633 S.W.2d 699 (1982). Where, as here, proof is required to demonstrate the validity of a statute, the absence of evidence to overcome the presumption of validity requires us to sustain the statute. *Holman* v. *City of Dierks,* 217 Ark. 677, 233 S.W.2d 392 (1950). Here the appellant offered no proof on the issue.

The appellant does argue that the "additional costs" of $75 earmarked for the city or county are paid into general revenue funds instead of being allocated to a particular purpose. Even so, there is no proof either of the amount of costs already being assessed or of the essential fact that the total of pre-existing costs and additional costs exceeds the expenses incurred by the cities and counties. Without such evidence we are not in a position to say that the legislature has attempted to resort to mandatory punishment in the guise of costs. This opinion of course does not bar a future challenge to the statute, supported by the necessary proof. *See Ark. Motor Vehicle Comm'n* v. *Cliff Peck Chevrolet,* 277 Ark. 185, 640 S.W.2d 453 (1982).

Affirmed.