The STATE of Oklahoma, Appellant,

v.

Sharon Ann CLABORN, Appellee.

No. S–92–164.

Court of Criminal Appeals of Oklahoma.

Feb. 8, 1994.

Joseph O. Minter, V (at trial), Madill, for defendant.

John Lawson, Asst. Dist. Atty. (at trial), Tishomingo, for State.

Joseph O. Minter, V (on appeal), Madill, for appellee.

Fred Collins, Dist. Atty., John Lawson, Asst. Dist. Atty., Tishomingo, Susan Brimer Loving, Atty. Gen. of Oklahoma, Robert Whittaker, Asst. Atty. Gen., Oklahoma City (on appeal), for appellant.

## OPINION

CHAPEL, Judge.

Sharon Ann Claborn was charged with two counts of Possession of a Controlled Dangerous Substance with Intent to Distribute, After Former Conviction of One Felony (63 O.S.Supp.1990, § 2–401(A)(1) and 21 O.S.Supp.1989, § 51, respectively) in Johnston County District Court, Case Nos. CRF–89–65 and CRF–89–68. She entered a negotiated plea of guilty in both cases. The Honorable John H. Scaggs, District Judge, sentenced Claborn to twenty years imprisonment on each count, to run concurrently.

The judge also imposed the following monetary assessments against Claborn: $4.00 C.L.E.E.T. fee required by 20 O.S.Supp.1988, § 1313.2(B); $3.00 fingerprinting fee required by 20 O.S.Supp.1990, § 1313.3(A); and, $100.00 Victim's Compensation Assessment required by 21 O.S.Supp.1990, § 142.18. The trial judge suspended the $500.00 Drug Assessment Fee required by 63 O.S.Supp. 1990, § 2–503.2. Claborn objected on state and federal constitutional grounds to the imposition of these assessments, and requested leave of court to file a Motion to Dismiss and supporting brief.

The trial court granted Claborn's request and also granted amicus curiae status to both the Oklahoma Criminal Defense Lawyers Association and the State Attorney General. After considering the arguments presented by all interested parties, the trial judge declared unconstitutional the statutory sections at issue. The State of Oklahoma appeals the trial judge's finding upon a reserved question of law pursuant to 22 O.S.Supp.1990, § 1053 and 22 O.S.1981, § 1053.1.[1]

 The State initially raises the presumption of constitutionality to which all statutes are entitled. See State v. Hunter, 787 P.2d 864, 865 (Okl.Cr.1990). Because of the presumption of constitutionality, the burden of proving unconstitutionality is on the one challenging the statute. See S.A.H. v. State, 753 P.2d 381, 383 (Okl.Cr.1988). The State contends Claborn did not meet this burden of proof. We agree and reverse the trial court's order declaring the statutory assessments unconstitutional.

## I. EX PARTE COFFELT: SEPARATION OF POWERS AND FREE ACCESS TO COURTS

 The trial judge presented four basic grounds to support his conclusion that the

---

1. The drug assessment fee authorized by 63 O.S.Supp.1990, § 2–503.2 which the trial judge suspended against Claborn recently withstood a similar constitutional attack in State v. Ballard, 868 P.2d 738 (Okl.Cr.1994). Accordingly, the constitutionality of that section is not at issue here.

three assessments in question are unconstitutional. Relying exclusively on *Ex parte Coffelt*, 93 Okl.Cr. 343, 228 P.2d 199 (1951), he initially concluded that the assessments violate Okla. Const. art. IV, § 1 (separation of powers doctrine), and Okla. Const. art. II, § 6 (right to free access to courts). In *Coffelt*, this Court declared unconstitutional certain statutes which required a defendant's payment upon conviction of a one dollar fee into a parole fund. The *Coffelt* Court found that because the one dollar fee did not "bear a true relation to the expenses of [that particular] prosecution," it constituted a tax. *Id.*, 228 P.2d at 201. By requiring the courts to impose this "tax," the Legislature had—in violation of the separation of powers doctrine—reduced the courts to a tax gathering agency of the executive branch.

When *Coffelt* was decided, neither Oklahoma caselaw nor statutes supported this Court's conclusion that a mandatory statutory assessment, the amount of which is not directly related to the particular prosecution at hand, is a tax and not a cost. *See id.*, 228 P.2d at 201. In fact, since *Coffelt*, other jurisdictions faced with similar issues have cited the case, only to adopt a more relaxed standard. *See Broyles v. State*, 285 Ark. 457, 688 S.W.2d 290 (1985) (An assessment against drunk drivers was not invalid even though there was not a precise relationship to the particular prosecution); *State v. Young*, 238 So.2d 589 (Fla.1970) (A $1.00 assessment for the law enforcement bureau, though not directly related to the particular prosecution, was not unreasonable; a convicted person should be forced to share the cost of protection of society).

Today we reject the rigid standard adopted in *Coffelt*. It is, of course, incumbent upon this Court and the judicial branch in general to carefully preserve and protect the separate powers assigned to each of the three branches of government by our constitution. With this in mind, we hold that as long as a criminal statutory assessment is reasonably related to the costs of administering the criminal justice system, its imposition will not render the courts "tax gatherers" in violation of the separation of powers doctrine.

■ We further note that the separation of powers doctrine does not demand crystal clear distinctions between branches of government. A certain amount of "blending" is inevitable. *See State v. Juvenile Division, Tulsa County District Court*, 560 P.2d 974, 975 (Okl.Cr.1977). However, a branch of government might violate the separation of powers clause if it were to involve itself in matters within the exclusive domain of another branch. *See Spitznas v. State*, 648 P.2d 1271, 1274 (Okl.Cr.1982).

■ By enacting the statutes at issue, the Legislature was merely exercising its rather broad power—defined by article V, section 36 of the Oklahoma Constitution—to make laws. *See also Salyers v. State*, 755 P.2d 97, 100 (Okl.Cr.1988) (Legislature has power to define crimes and fix degrees of punishment); *State ex rel. Oklahoma Tax Commission v. Daxon*, 607 P.2d 683, 687 (Okla.1980) (Legislature is constitutionally vested with authority to pass legislation on any subject not specifically prohibited by state or federal constitutions). The Legislature does not infringe upon matters within the exclusive province of the judiciary simply by performing its legislative duties. *See Spitznas* at 1274.

Accordingly, the statutes at issue are not violative of the separation of powers doctrine. The various assessments are reasonably related to the costs of administering the criminal justice system and are not simply an executive branch "tax." Further, the statutory assessments were properly enacted by the Legislature in its role as lawmaker. Their enactment does not infringe upon matters within the exclusive province of the judiciary.

■ The trial judge's conclusion that the assessments in question violate criminal defendants' rights to free access to the courts was also grounded in the *Coffelt* decision. There, this Court held that imposing the one dollar parole fund fee might "create insurmountable prejudices against those who could not afford to submit to a trial because they could not afford to pay the costs incident thereto." *Id.*, 228 P.2d at 202. Citing by way of analogy the potentially high cost of

being convicted of an offense such as simple possession of marijuana, the trial court in the present case concluded that imposition of the assessments now at issue would also effectively deny a defendant free access to the courts in violation of article II, section 6 of the Oklahoma Constitution.

This Court explicitly overruled this part of *Coffelt* in *State v. Ballard, supra* n. 1. Twenty years after the *Coffelt* decision, the Legislature remedied the "free access" problem by amending 28 O.S.1951, § 101, to provide for defendants who do not have the means to pay an imposed fine, fee or cost.[2] Based upon our decision in *Ballard,* we hold that the assessments in this case likewise do not violate the free access to courts provision in article II, section 6 of the Oklahoma Constitution.

## II. THIRTEENTH AMENDMENT PROHIBITION AGAINST INVOLUNTARY SERVITUDE

■ The trial court's second basis for holding the assessments at issue unconstitutional was that their imposition violates the Thirteenth Amendment's prohibition against involuntary servitude.[3] Based upon its interpretation of the Thirteenth Amendment, the trial court apparently concluded that involuntary servitude may be constitutionally imposed as a punishment for a crime of which a defendant has been "duly convicted." The trial court then referred to *Belle v. State*, 516 P.2d 551, 552 (Okl.Cr.1973), which held that "a deferred sentence is not a conviction until such time as the trial court pronounces judgment and sentence." Considering these "factors," the trial court concluded that a defendant may properly be subjected to involuntary servitude (in the form of the imposition of the instant assessments), but not unless he or she has been "convicted" (which *Belle* says

they could not be if they had received a deferred sentence).

The trial court's analysis is based upon the dubious premise that the imposition of the assessments at issue in this case would constitute involuntary servitude. Other than the words of the Thirteenth Amendment, the trial court never offered a definition or meaningful construction of the term "involuntary servitude." We have discovered no support for and must reject the trial court's theory that imposing the instant assessments violates the Thirteenth Amendment. Based upon this theory, the trial court concluded that the assessments at issue cannot be imposed upon defendants who have received deferred sentences.[4] Because this conclusion was based on a false premise, it must also be rejected. In addressing the trial court's statement that imprisonment for failure to pay costs constitutes involuntary servitude, we would refer to our previous "free access" analysis.

## III. EQUAL PROTECTION

■ Equal protection principles formed the basis of the trial court's third ground for declaring the assessments at issue unconstitutional. The trial court actually found two equal protection violations. First, the court concluded that the assessments are unconstitutional because—according to its analysis—they cannot be imposed if a defendant receives a jury trial, but they must be imposed if a defendant pleads guilty or nolo contendere. Addressing only the constitutionality of 21 O.S.Supp.1990, § 142.18 (victim's compensation assessment), the court next concluded that this statutory assessment discriminates against non-indigent defendants.

The trial court's first equal protection violation theory is rather complex and requires explanation. The theory is based upon the

---

2. The Legislature amended section 101 in 1971. The statute currently reads, in pertinent part, as follows:

> If the defendant is without means to pay the fine, fees or costs, the total amount owed shall be entered upon the judgment docket and thereupon the same remedies shall be available for the enforcement of said judgment as are available to any other judgment creditor.

3. The Thirteenth Amendment to the United States Constitution provides as follows:

> Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

4. We note that Claborn did not receive a deferred sentence.

state constitutional right to a jury trial (Okla. Const. art. II, § 19), the statutory right to have a jury assess punishment (22 O.S.1991, § 926), and *Brown v. State*, 314 P.2d 362 (Okl.Cr.1957), which addressed the relationship between section 926 and 21 O.S.Supp. 1983, § 64. The 1951 version of section 64 provided as follows:[5]

> Upon a conviction for any crime punishable by imprisonment in any jail or prison, in relation to which no fine is herein prescribed, the court may impose a fine on the offender not exceeding Two Hundred Dollars ($200.00) in addition to the imprisonment prescribed.

The defendant in *Brown* was convicted and sentenced by a jury. Acting under section 64, the trial judge then imposed an additional $200.00 fine. On appeal, the defendant claimed the trial judge was without authority to add to the penalty imposed by the jury. This Court essentially agreed and held that a trial judge's power to impose a section 64 fine can be exercised in only one of the following instances: where a jury has been waived and the case is tried to the court; where the jury fails or refuses to assess the penalty; or, where a defendant pleads guilty. *Id.* at 366. The trial court in the instant case concluded that the *Brown* limitations should apply to the imposition of the assessments at issue here. Accordingly, it held that under *Brown*, trial judges may not impose the statutory assessments against a defendant who is tried by a jury, but must impose them against a defendant who pleads guilty. Because of the *Brown* limitations, concluded the trial court, defendants such as Claborn who plead guilty are subject to the assessments, while similarly situated defendants who elect jury trials are not.

In *Brown*, this Court interpreted sections 926–928 of Title 22 and section 64 of Title 21 so that they would each be given effect yet not be in conflict. Our task in that case was to determine whether a trial judge's discretion to impose additional fines under section 64 was in conflict with the section 926 right to have a jury determine punishment. The question in this appeal is whether the mandatory statutory assessments at issue conflict with the section 926 right to have a jury determine punishment. We hold that they do not and that *Brown* is inapplicable.[6]

The assessments at issue are not an addition to the legislatively sanctioned range of punishment for a given crime, the final determination of which is left to the jury under section 926. Rather, they are to be considered either costs or fees authorized by statute. *See* 28 O.S.Supp.1973, § 101. *See also Ballard, supra.* While section 101 does state that all such costs in the prosecution of criminal actions "shall ... be adjudged a part of the penalty of the offense of which the defendant may be convicted," this fact does not bring the instant assessments under the purview of the section 926 right to have a jury determine punishment. Because these costs or assessments are not part of a putative defendant's possible "punishment" within the section 926 meaning of that word, they need not be submitted to a jury for a decision as to whether to impose them. For these reasons, the rule in *Brown* does not apply to the assessments at issue and does not operate to limit their imposition only against those defendants who choose to plead guilty rather than face a trial. The mandatory assessments neither interfere with the exercise of a fundamental right nor operate to the disadvantage of any class. *See State v. Pratt*, 816 P.2d 1149, 1152 (Okl.Cr.1991). Accordingly, they do not violate equal protection principles.

■ The second equal protection violation the trial court found involves only the victim's compensation assessment provided in 21 O.S.1990, § 142.18. In determining the amount of the assessment under this section, a trial judge must consider "factors such as the severity of the crime, the prior criminal record, and the ability of the defendant to

---

5. Section 64 has been amended and now provides for possible fines of not more than $1,000 for misdemeanor convictions, and not more than $10,000 for felony convictions.

6. We also note that this Court overruled *Brown* in the recent case *Fite v. State*, 65 OBJ 75, —— P.2d —— (Okl.Cr.1993) (holding that *Brown* created the anomalous situation in which a defendant who pleads guilty can be punished more harshly than one who is convicted by jury).

pay, as well as the economic impact of the victim compensation assessment on the dependents of the defendant." *Id.* The trial court determined that the consideration of these factors operates to the disadvantage of non-indigent defendants and provides greater protection for poor defendants. Based upon this analysis, the trial court concluded that section 142.18 violates the Equal Protection Clause of the Fourteenth Amendment.

Assuming that section 142.18 operates to the disadvantage of non-indigent defendants, the question is whether non-indigent defendants are a suspect class. If they are, this Court must strictly scrutinize the manner in which section 142.18 operates to their disadvantage. We hold that neither people convicted of crimes, nor non-indigent people convicted of crimes constitute suspect classifications. *See Ballard, supra.* The proper inquiry, therefore, is whether there exists a rational basis for the Legislature's requirement that trial courts consider the financial impact upon a defendant in determining the amount of a section 142.18 assessment.

The money collected pursuant to section 142.18 goes into a Victims Compensation Revolving Fund, to aid victims of crimes. While the Legislature obviously thought some sort of compensation by criminals to their victims was important, it also felt that consideration should be given to the financial situation of the families of criminals who are assessed a penalty under this section. Because fined criminals have in many cases already received a jail sentence, their families could be burdened with the responsibility of paying any statutory assessment. We see a rational basis for the Legislature's decision to require trial courts to factor into their calculation of a victim's compensation assessment the financial condition of defendant and family.

## IV. *GAINES V. STATE*

██ In its fourth and final ruling declaring the assessments in question unconstitutional, the trial court concluded that they contravene the holding in *Gaines v. State,* 568 P.2d 1290 (Okl.Cr.1977). We disagree. The defendant in *Gaines* was charged with distribution of a controlled dangerous sub-

stance, after former conviction of a felony. In its instructions to the jury, the trial judge set forth the appropriate sentence range specified in the enhancement provisions of section 51 of Title 21, as well as the amount of fine which could be imposed on the defendant under section 2–401 of Title 63 (Uniform Controlled Dangerous Substance Act).

This Court held that it was improper to enhance the defendant's sentence under section 51, and also allow the jury to impose the fine provided in section 2–401—the actual statute under which he was charged. We reasoned that "[p]unishment may not be assessed by combining statutes, but must fall within the limitations of one statute only." *Id.* at 1294. According to the trial court in the instant case, to impose the assessments at issue in addition to the required penalty for a particular crime violates the *Gaines* rule.

Taken out of context, the *Gaines* quotation might appear to prohibit the imposition of a criminal penalty which—as in the present case—could be considered the "product" of more than one statutory provision. Yet, *Gaines* simply prohibits trial courts from both enhancing habitual offenders' sentences under the terms of the general enhancement provisions of section 51, and imposing any fine or prison term set forth in the substantive statutory scheme violated. *See also Mitchell v. State,* 733 P.2d 412, 416 (Okl.Cr. 1987) (When defendant convicted of drug offense has sentence enhanced pursuant to section 51 of Title 21, the fine provided in the substantive drug statute may not be additionally imposed). Unlike the monetary penalties provided in the Uniform Controlled Dangerous Substances Act, the statutory assessments at issue in this case are not "fines" to be imposed as part of punishment. According to 28 O.S.Supp.1973, § 101, *supra,* they constitute costs or fees authorized by statute. To impose these assessments upon a defendant like Claborn whose sentence had been properly enhanced under either the general or specific enhancement schemes would not contravene the spirit or letter of *Gaines* and its progeny.

The judgment of the trial court declaring 20 O.S.Supp.1988, § 1313.2(B), 20 O.S.Supp. 1990, § 1313.3(A), and 21 O.S.Supp.1990, § 142.18 unconstitutional is therefore **RE-VERSED.** The cause is **REMANDED** for further proceedings not inconsistent with this opinion.

JOHNSON, V.P.J., and LANE and STRUBHAR, JJ., concur.

LUMPKIN, P.J., Specially concurs.

LUMPKIN, Presiding Judge, specially concurring.

I join in the Court's well-reasoned opinion, but write separately to express concerns not specifically addressed.

I agree the assessments discussed here are not unconstitutional because they do not violate Okla. Const. art IV, § 1, demanding a separation of powers. However, I believe dicta by Judge Brett in *Ex parte Coffelt*, 93 Okl.Cr. 343, 228 P.2d 199, 202–03 (1951) is well taken and should not be ignored. As we stated in *Ballard v. State*, 868 P.2d 738 (Okl. Cr.1994), we do not preclude the possibility that at some point, the imposition to the Judicial branch by the Legislature of additional responsibilities in the form of collecting assessments may become so burdensome it will interfere with the court's ability to perform its central functions. This Court should be ever vigilant to guard against creeping encroachment upon the dividing line between the three branches of government, to ensure one branch does not do indirectly what it is precluded from doing directly.

I also agree with the Court's determination the assessments do not violate the Thirteenth Amendment to the United States Constitution. The Legislature has endeavored to give courts various sentencing options as alternatives to incarceration. *See, e.g.,* 22 O.S. 1991, §§ 982a (judicial review of sentencing or probation revocation), 991a (county community service), 991a–2 (night or weekend incarceration), 991a–4 (community service sentencing program). To hold as Appellee would have us hold could limit a court's consideration of alternate methods to deal with nonviolent offenders. And needless to say, the concept of involuntary servitude was never intended to apply to methodologies used to deal with those sentenced pursuant to valid punishment provisions.

I also agree *Brown v. State*, 314 P.2d 362 (Okl.Cr.1957) and *Gaines v. State*, 568 P.2d 1290 (Okl.Cr.1977) have no application to the case at hand.