**Opinion issued August 30, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00768-CR

———————————

**RUBEN LEE ALLEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1487627**

---

**OPINION ON REHEARING[1]**

---

[1] The State filed a motion for en banc reconsideration of our opinion of November 28, 2017. We withdrew the earlier opinion and judgment. We issue this opinion and accompanying judgment in their stead.

A jury found Ruben Lee Allen guilty of the offense of aggravated robbery with a deadly weapon[2] and assessed punishment at 25 years' confinement. In two issues, Allen contends that the trial court lacked jurisdiction over this case and that a $200 "summoning witness/mileage" fee[3] assessed against him after his conviction is unconstitutional.

We affirm.

## Background

K. Rajan is a pharmacist at the BZ Pharmacy in Harris County, Texas. While he was alone in the pharmacy, three men entered the store, and one of the men pointed a firearm at him as they robbed the pharmacy of money, mediations, and various items from the pharmacy safe. Fingerprints recovered during the police investigation were linked to Allen, who was later convicted of aggravated robbery with a deadly weapon. The jury assessed punishment at 25 years' confinement.

In the judgment of conviction, the trial court ordered Allen to pay court costs, which included a $200 charge for "summoning witness/mileage."[4] He appeals.

---

[2]     *See* TEX. PENAL CODE § 29.03(a)(2).

[3]     *See* TEX. CODE CRIM. PROC. art. 102.011(a)(3), (b) (imposing $5 charge on defendant convicted of felony "for summoning [each] witness" and requiring defendant to pay "29 cents per mile for mileage required of an officer to perform a service . . . and to return from performing that service").

[4]     *See id.*

## Jurisdiction

In his first issue, Allen argues that the trial court, the 337th District Court of Harris County, Texas, lacked jurisdiction over this case because the underlying indictment was presented to the grand jury of the 230th District Court of Harris County, Texas. The State asserts that Allen waived his complaint by not first raising this procedural matter in the trial court.

The Code of Criminal Procedure sets forth the organization and duties of a grand jury. *See* TEX. CODE CRIM. PROC. arts. 19.01–20.22. A trial court forms, impanels, and empowers a grand jury to inquire into indictable offenses, including aggravated robbery with a deadly weapon. *See* TEX. CODE CRIM. PROC. art. 20.09 ("The grand jury shall inquire into all offenses liable to indictment of which any member may have knowledge, or of which they shall be informed by the attorney representing the State, or any other credible person."); *Ex parte Edone*, 740 S.W.2d 446, 448 (Tex. Crim. App. 1987) ("Once formed and impaneled by the district judge, the grand jury shall inquire into all offenses liable to indictment" (internal quotations omitted)); *Davis v. State*, 519 S.W.3d 251, 254 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). Because a grand jury's deliberations are secret, it retains a "separate and independent nature from the court." *Ex parte Edone*, 740 S.W.2d at 448.

After hearing testimony, a grand jury then votes concerning the presentment of an indictment.[5] *See* TEX. CODE CRIM. PROC. art. 20.19 ("After all the testimony which is accessible to the grand jury shall have been given in respect to any criminal accusation, the vote shall be taken as to the presentment of an indictment . . . ."); *Bourque v. State*, 156 S.W.3d 675, 678 (Tex. App.—Dallas 2005, pet. ref'd) (grand jury "hears all the testimony available before voting on whether to indict the accused").

If "nine grand jurors concur in finding the bill," the State prepares the indictment and the grand jury foreman signs it and delivers it to the judge or the clerk of the court. TEX. CODE CRIM. PROC. arts. 20.19–.21; *Bourque*, 156 S.W.3d at 678. An indictment is considered "'presented' when it has been duly acted upon by the grand jury and received by the court." TEX. CODE CRIM. PROC. art. 12.06; *see Henderson v. State*, 526 S.W.3d 818, 819 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). Thus, presentment occurs when an indictment is delivered to either the judge or the clerk of the court. TEX. CODE CRIM. PROC. art. 20.21; *State v. Dotson*, 224 S.W.3d 199, 204 (Tex. Crim. App. 2007).

The district clerk for each county "is *the* clerk of the court for all the district courts in that county." *Henderson*, 526 S.W.3d at 820 (quoting *Ex parte Alexander*,

---

[5] An indictment is "a written instrument presented to a court by a grand jury charging a person with the commission of an offense." TEX. CONST. art. V, § 12(b); *see* TEX. CODE CRIM. PROC. art. 21.02 (setting out requirements of indictment).

4

861 S.W.2d 921, 922 (Tex. Crim. App. 1993), *superseded by statute on other grounds as stated in Ex parte Burgess*, 152 S.W.3d 123, 124 (Tex. Crim. App. 2004)). "The fact that a signed indictment features an original file stamp of the district clerk's office is strong evidence that a returned indictment was 'presented' to the court clerk within the meaning of Article 20.21." *Dotson*, 224 S.W.3d at 204 (because indictment "bears an original file stamp, that fact convincingly shows the presentment requirement was satisfied"). Once an indictment is presented, jurisdiction vests with the trial court. TEX. CONST. art. V, § 12(b); *Dotson*, 224 S.W.3d at 204.

All state district courts within the same county have jurisdiction over cases in that county, and criminal district courts have original jurisdiction over felony criminal cases in that county. *See* TEX. CODE CRIM. PROC. art. 4.05; TEX. GOV'T CODE § 74.094; *Henderson*, 526 S.W.3d at 820; *Davis*, 519 S.W.3d at 254. In counties having two or more district courts, the judges of the courts "may adopt rules governing the filing and numbering of cases, the assignment of cases for trial, and the distribution of the work of the courts as in their discretion they consider necessary or desirable for the orderly dispatch of the business of the courts." TEX. GOV'T CODE § 24.024; *see id.* § 74.093 (addressing adoption of local rules of administration to provide, in part, for assignment, docketing, transfer, and hearing of all cases); *Henderson*, 526 S.W.3d at 820; *Davis*, 519 S.W.3d at 255.

5

In multi-court counties, such as Harris County, a specific district court may impanel a grand jury, but it does not necessarily follow that all cases considered by that court's grand jury are assigned to that court. *See Henderson*, 526 S.W.3d at 820; *Davis*, 519 S.W.3d at 255 ("If a grand jury in one district court returns an indictment in a case, the case nevertheless may be then assigned to any district court within the same county."); *Hernandez v. State*, 327 S.W.3d 200, 204 (Tex. App.—San Antonio 2010, pet. ref'd); *Bourque*, 156 S.W.3d at 678; *Tamez v. State*, 27 S.W.3d 668, 670 n.1 (Tex. App.—Waco 2000, pet. ref'd) (noting that "the judges of the Harris County district courts exercising criminal jurisdiction have adopted a procedure by which indictments are filed in each court on a rotating basis without reference to the court which empaneled the grand jury presenting the indictments"); *see also Shepherd v. State*, No. 01-16-00748-CR, 2017 WL 2813165, at *1 (Tex. App.—Houston [1st Dist.] June 29, 2017, pet. ref'd) (mem. op., not designated for publication). In other words, one court may impanel a grand jury, and if an indictment is presented, the case may be filed in another court of competent jurisdiction within the same county. *See Aguillon v. State*, No. 14-17-00002-CR, 2017 WL 3045797, at *2 (Tex. App.—Houston [14th Dist.] July 18, 2017, pet. ref'd) (mem. op., not designated for publication); *Cannon v. State*, No. 05-13-01109-CR, 2014 WL 3056171, at *4 (Tex. App.—Dallas July 7, 2014, no pet.) (mem. op., not designated for publication);

6

*Thornton v. State*, No. 05-13-00610-CR, 2014 WL 2946457, at *3 (Tex. App.—Dallas May 6, 2014, no pet.) (mem. op., not designated for publication).

The 230th and 337th District Courts are both criminal district courts in Harris County, Texas. They both share the same clerk, i.e., the Harris County District Clerk, and have original jurisdiction in felony criminal cases. On November 6, 2015, the State filed in the 337th District Court a complaint, alleging that Allen committed the offense of armed robbery. A month later, the grand jury returned a true bill of indictment concerning the same conduct. *See* TEX. CONST. art. V, § 12(b); TEX. CODE CRIM. PROC. art. 21.02 (setting out requirements of indictment); *State v. Smith*, 957 S.W.2d 163, 164–65 (Tex. App.—Austin 1997, no pet.) (describing "constitutional requisites for an indictment"). That indictment was presented to the Harris County District Clerk, as demonstrated by the clerk's original file stamp, and filed in the 337th District Court, the trial court where the State's complaint was originally filed. *See Shepherd*, 2017 WL 2813165, at *1 ("After the grand jury votes concerning presentment of an indictment, the State can file in any court that has jurisdiction over the case.").

As additional evidence that the indictment was acted upon by the grand jury and presented to, or received by, the 337th District Court, the grand jury foreman signed the indictment, the trial court directed the State to read the indictment to Allen in open court pretrial, and it accepted Allen's plea of "not guilty." *See Henderson*,

7

526 S.W.3d at 820 ("Logically, [defendant]'s arraignment . . . could not have occurred in the 177th District Court if the trial court had not actually received the indictment."); *see also* TEX. CODE CRIM. PROC. art. 12.06 (stating presentment occurs when indictment "has been duly acted upon by the grand jury and received by the court"). Thus, the 337th District Court was properly vested with jurisdiction over Allen. *See* TEX. CODE CRIM. PROC. arts. 4.05, 4.16; *see also Aguillon*, 2017 WL 3045797, at *2 (although amended indictment signed by foreman of grand jury impaneled by 177th District Court, 184th District Count had jurisdiction when amended indictment refiled in 184th District Court, which had "first-filed related case"); *Helsley*, 2017 WL 931707, at *2 (stating that when evidence of presentment appears in record, trial court has jurisdiction to try defendant for charges encompassed by indictment); *Williams v. State*, No. 06-14-00224-CR, 2015 WL 4071542, at *4 (Tex. App.—Texarkana July 6, 2015, no pet.) (mem. op., not designated for publication) (although indictment was presented by grand jury impaneled by 291st District Court, case was first filed in 282nd District Court, which obtained jurisdiction); *Paz v. State*, No. 05-14-01127-CR, 2015 WL 6386424, at *10 (Tex. App.—Dallas Oct. 22, 2015, no pet.) (mem. op., not designated for publication) ("Jurisdiction over felony cases, such as this case, lies in the district court or criminal district court where the indictment is first filed.").

Allen argues that a grand jury impaneled by one trial court cannot present an indictment to a different trial court because a grand jury serves one particular court. However, this Court has expressly rejected this argument on at least four previous occasions. *See Henderson*, 526 S.W.3d at 819–21 (rejecting argument 177th District Court of Harris County, Texas never acquired jurisdiction over defendant because grand jury from 182nd District Court of Harris County, Texas presented indictment); *Shepherd*, 2017 WL 2813165, at *1; *Hernandez v. State*, No. 01-15-00837-CR, 2017 WL 1416877, at *2 (Tex. App.—Houston [1st Dist.] Apr. 20, 2017, pet. ref'd) (mem. op., not designated for publication) (rejecting argument that 263rd District Court of Harris County, Texas, lacked jurisdiction because grand jury of 184th District Court of Harris County, presented indictment); *Davis*, 519 S.W.3d at 254–56 (rejecting similar argument). We have repeatedly held that a trial court is not deprived of jurisdiction over a criminal defendant in these circumstances. *See, e.g.*, *Henderson*, 526 S.W.3d at 819–21; *Shepherd*, 2017 WL 2813165, at *1; *Hernandez*, 2017 WL 1416877, at *2; *Davis*, 519 S.W.3d at 254–56. Our sister court has likewise rejected this argument. *Johnson v. State*, No. 14-16-00658-CR, 2018 WL 1476275, at *2 (Tex. App.—Houston [14th Dist.] Mar. 27, 2018, no pet. h.); *see Hines v. State*, No. 05-17-00416-CR, 2017 WL 6276005, at *1 (Tex. App.—Dallas Dec. 11, 2017, no pet.) (same).

Moreover, Allen's arguments raise a procedural issue related to his indictment. *See Henderson*, 526 S.W.3d at 821; *Shepherd*, 2017 WL 2813165, at \*1; *Hernandez*, 2017 WL 1416877, at \*2; *Davis*, 519 S.W.3d at 254–56. Although a jurisdictional defect in an indictment may be challenged for the first time on appeal, a procedural deficiency may not. *See Cook*, 902 S.W.3d at 480; *Henderson*, 526 S.W.3d at 821; *Davis*, 519 S.W.3d at 256; *see also Mosley v. State*, 354 S.W.2d 391, 393–94 (Tex. Crim. App. 1962); *Lemasurier v. State*, 91 S.W.3d 897, 899–900 (Tex. App.—Fort Worth 2002, pet. ref'd) (holding defendant waived error regarding procedural deficiency with indictment by failing to timely file plea to jurisdiction). Allen did not object to the indictment or the proceedings in the trial court.

Accordingly, we hold that the trial court had jurisdiction over this case and Allen's failure to object to the indictment or the proceedings in the trial court constitutes a waiver of his right to challenge any procedural irregularity related to his indictment on appeal. *See Henderson*, 526 S.W.3d at 819–21; *Hernandez*, 2017 WL 1416877, at \*2.

We overrule Allen's first issue.

### "Summoning Witness/Mileage" Fee

In his second issue, Allen argues that the "summoning witness/mileage" fee assessed against him by the trial court is (1) facially unconstitutional because it violates the separation-of-powers clause of the Texas Constitution and

(2) unconstitutional as applied to him because it violates his constitutional rights to compulsory process and confrontation. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10 (rights to compulsory process and confrontation), TEX. CONST. art. II, § 1 (separation of powers); *see also* TEX. CODE CRIM. PROC. art. 1.05.

## A.  Reviewing a facial challenge

Whether a criminal statute is constitutional is a question of law we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013); *Maloney v. State*, 294 S.W.3d 613, 626 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). When reviewing a statute's constitutionality, we "presume that the statute is valid and that the legislature was neither unreasonable nor arbitrary in enacting it." *Curry v. State*, 186 S.W.3d 39, 42 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002) (stating that appellate court addressing challenge to statute's constitutionality must presume that statute is valid and legislature has not acted unreasonably or arbitrarily); TEX. GOV'T CODE § 311.021 (noting that courts presume "compliance" with Texas and United States Constitutions). We must uphold the statute if we can apply a reasonable construction that will render it constitutional. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979); *see Maloney*, 294 S.W.3d at 626 (if statute can be interpreted in two ways, one of which sustains its validity, we apply interpretation sustaining its

validity). The party challenging the statute has the burden to establish its unconstitutionality. *Rodriguez*, 93 S.W.3d at 69; *Maloney*, 294 S.W.3d at 626.

"A facial challenge is an attack on the statute itself as opposed to" its application under a particular set of circumstances. *Salinas v. State*, 523 S.W.3d 103, 106 (Tex. Crim. App. 2017). To prevail, the party asserting a facial challenge "must establish that the statute always operates unconstitutionally in all possible circumstances." *Rosseau*, 396 S.W.3d at 557; *see Horhn v. State*, 481 S.W.3d 363, 372 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). It is, therefore, "the most difficult challenge to mount successfully." *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992); *Toledo v. State*, 519 S.W.3d 273, 279 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

If a statute can be reasonably interpreted in a manner that does not offend the constitution, a reviewing court must overrule a facial challenge to the statute's constitutionality. *Curry*, 186 S.W.3d at 42.

We first review Allen's facial challenge to Article 102.011

## B.      Facial constitutionality of the "summoning witness/mileage" fee

Upon his conviction, Allen was assessed a "summoning witness/mileage" fee of $200. Allen argues that the fee violates the separation-of-powers clause of the Texas Constitution and constitutes an impermissible tax collected by the judiciary because "the funds" received for the fee are "not directed by statute to be used for a

criminal justice purpose." Instead, he argues, "the funds" are "directed towards the general revenue fund of the county . . . in which the convicting court is located."

**1. Fees collected by courts as tax gatherers are unconstitutional**

Article II, section 1, of the Texas Constitution provides:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1; *see Meshell v. State*, 739 S.W.2d 246, 252 (Tex. Crim. App. 1987) (observing that this clause divides Texas government into legislative, executive, and judicial branches). "This division ensures that power granted one branch may be exercised by only that branch, to the exclusion of the others." *Ex parte Lo*, 424 S.W.3d at 28; *see Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 600 (Tex. 2001) ("The separation-of-powers doctrine prohibits one branch of government from exercising a power inherently belonging to another branch."); *Meshell*, 739 S.W.2d at 252 (stating that "any attempt by one department of government to interfere with the powers of another is null and void." (internal quotations omitted)).

The separation-of-powers clause is violated "when one branch of government assumes or is delegated a power more properly attached to another branch." *Ex parte*

13

*Lo*, 424 S.W.3d at 28 (internal quotations omitted); *see Salinas v. State*, 523 S.W.3d 103, 106–07 (Tex. Crim. App. 2017). Texas courts have addressed a number of separation-of-powers challenges to statutes that require trial courts to assess various fees as court costs as part of criminal convictions. *See, e.g.*, *Salinas*, 523 S.W.3d at 108–10; *Peraza v. State*, 467 S.W.3d 508 (Tex. Crim. App. 2015); *Ex Parte Carson*, 159 S.W.2d 126 (Tex. Crim. App. 1942).

A court's assessment of fees as part of court costs in a criminal case violates the separation-of-powers clause when a court is delegated the executive branch's power to collect taxes. *Salinas*, 523 S.W.3d at 106–07; *Peraza*, 467 S.W.3d at 517. On the other hand, a court's assessment is a proper judicial function when "the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes." *Salinas*, 523 S.W.3d at 107, 109 n.26 (quoting *Peraza*, 467 S.W.3d at 517). In other words, a reviewing court must determine whether the fee is a disguised tax on a criminal defendant (which is unconstitutional) or a fee for a legitimate criminal justice purpose (which is constitutional). *See Casas v. State*, 524 S.W.3d 921, 925–27 (Tex. App.—Fort Worth 2017, no pet.) ("Although courts may not operate as tax gatherers, which is a function reserved to the executive branch of government, courts may collect fees in criminal cases as part of its judicial function if" the fees reflect "legitimate criminal justice purposes."). "What constitutes a

14

legitimate criminal justice purpose is a question to be answered on a statute-by-statute/case-by-case basis." *Salinas*, 523 S.W.3d at 107; *see Peraza*, 467 S.W.3d at 518.

Before *Peraza*, which was decided in 2015, the standard in Texas was that a court cost had to be "necessary" and "incidental" to the trial of a criminal case to withstand a facial challenge to its constitutionality. *See Peraza*, 467 S.W.3d at 517. The *Peraza* Court noted alternative formulations of the rule in other jurisdictions, including requiring that a court cost be "reasonably related to the costs of administering the criminal justice system," *id.* (discussing *State v. Claborn*, 870 P.2d 169 (Okla. Crim. App. 1994)), or that there "be a 'direct relationship' between the type of offense" underlying the conviction and the cost of court being assessed, *id.* (discussing *State v. Young*, 238 So. 2d 589 (Fla. 1970)).

The *Peraza* Court concluded that the existing Texas standard of necessary/incidental was "too limiting" because there can be legitimate costs incurred in the administration of the criminal justice system that are beneficial to the system and worthy of recoupment even if they do not qualify as "'necessary' or 'incidental' to the trial of a criminal case." *Id.* The *Peraza* Court rejected having a narrow requirement that the costs be "'necessary' and 'incidental' to the trial of a criminal case" because such a standard "ignores the legitimacy of costs that, although not necessary to, or an incidental expense of, the actual trial of a criminal

15

case, may nevertheless be directly related to the recoupment of costs of judicial resources expended in connection with the prosecution of criminal cases within our criminal justice system," given that "the prosecution of criminal cases and our criminal justice system have greatly evolved" to include advantageous processes that exceed the bare minimum of necessity. *Id.* at 517. Instead, the *Peraza* Court expanded the body of fees that could survive a facially unconstitutional challenge to include those assessed under a statute that "provides for an allocation . . . to be expended for legitimate criminal justice purposes" in the future, untied to the specific expenses incurred in "the actual trial of a criminal case." *Id.* (again, noting that legitimate criminal justice purpose is one that "relates to the administration of our criminal justice system").

Under *Peraza*'s broader rule, a statute that requires a convicted defendant to pay court costs that are "to be expended for legitimate criminal justice purposes" in the future is constitutional even if those costs do not arise out of that particular defendant's prosecution and have no direct relationship to that particular type of prosecution, so long as the costs are "directly related to the recoupment of costs of judicial resources expended in connection with the prosecution of criminal cases within our criminal justice system." *See id.*

By concluding that the *Carson* standard was "too limiting" and expanding the category of costs that can be properly assessed, *Peraza* suggests that a statute that

requires a convicted defendant to reimburse the State for court costs that have already been "incurred in the administration of the criminal justice system" in that prosecution remain proper and facially valid. *Id.* at 517; *see id*. at 510 (describing that appellant's constitutional challenge as focused on how assessed court costs "are to be disbursed"). We, therefore, interpret *Peraza* as holding that at least two types of fees assessed as court costs are constitutionally permissible: (1) court costs to reimburse criminal justice expenses incurred in connection with that criminal prosecution and (2) court costs to be expended in the future to off-set future criminal-justice costs. *Id.* at 517–18.

After *Peraza*, the Court issued *Salinas*, in which it explained that whether a future allocation relates to the administration of our criminal justice system depends on "what the governing statute says about the intended use of the funds, not whether [the] funds are actually used for a criminal justice purpose." 523 S.W.3d at 107, 109 n.26; *see Casas*, 524 S.W.3d at 926. In other words, the relevant statute must direct "that the funds be used for something that is a legitimate criminal justice purpose; it is not enough that some of the funds may ultimately benefit someone who has some connection with the criminal justice system." *Salinas*, 523 S.W.3d at 109 n.26.

In *Salinas*, the Court addressed two fees that were part of a "consolidated court cost" fee assessed by Local Government Code section 133.102. The collected fees were directed to two accounts: (1) the "comprehensive rehabilitation" account and

17

(2) the "abused children's counseling" account. The fees were not directly related to costs that had been incurred in that defendant's criminal matter. Nor were they limited in their future uses to costs to be incurred for criminal justice purposes. The Court held that the two fees violated the separation-of-powers clause of the Texas Constitution. 523 S.W.3d at 105, 108–110 & n.26.

In addressing these fees, which were collected for a future use untied to that particular criminal prosecution, the Court focused on how the statute required the fees to be spent. The portion of the statute concerning the "comprehensive rehabilitation" account did not, "on its face, appear to serve a legitimate criminal justice purpose." *Id.* at 108. It did not, for example, restrict rehabilitation services to "anything relating to criminal justice." *Id.* Nor did the statute require that the government agency provide rehabilitation services only to crime victims. *Id.* Similarly, the account into which the fees were deposited was not restricted to criminal justice. The fund's constitutionality was not saved by the fact that the physical injuries that might require rehabilitation services "could easily" be "caused by a crime." *Id.* The Court concluded that the account did not qualify as an allocation of funds "to be expended for legitimate criminal justice purposes." *Id.* at 109.[6]

---

[6] Since *Salinas*, the Court has reiterated that the "comprehensive rehabilitation" court cost is unconstitutional. *See Johnson v. State*, 537 S.W.3d 929 (Tex. Crim. App. 2017).

The Court held similarly with regard to the funds allocated to the "abused children's counseling" account. *Id.* Monies from this account were deposited into the State's general revenue fund. *Id.* at 110. The Court refused to uphold the funding's constitutionality "on the basis of its name" given that, through legislative action, the collected fee no longer funded a counseling program for abused children and, instead, went directly to the state's "general revenue" account. *Id.*

With no connection to past incurred expenses in that particular prosecution or future criminal justice expenditures, the statute imposing the fees was held to be facially unconstitutional. *See id.* at 109 & n.26; *Toomer v. State*, No. 02-16-00058-CR, 2017 WL 4413146, at *3 (Tex. App.—Fort Worth Oct. 5, 2017, no pet. h.) (mem. op.); *Casas*, 524 S.W.3d at 927 (because "[n]either the statute authorizing the collection of the emergency-services cost nor its attendant statutes direct the funds to be used for a legitimate, criminal-justice purpose; . . . it is a tax that is facially unconstitutional"); *see also Peraza*, 467 S.W.3d at 517 (holding that, "if [a] statute under which court costs are assessed . . . provides for an allocation of . . . court costs to be expended for legitimate criminal justice purposes, then the statute allows for a constitutional application that will not render the courts tax gatherers in violation of the separation of powers clause").

*Salinas* did not involve court costs directly related to the trial of that particular case. And, while *Peraza* expanded the category of costs that would be facially

19

constitutional and *Salinas* explained the standard for concluding that a future allocation relates to the administration of our criminal justice system, neither case, individually or collectively, explicitly address whether a court cost linked to an expense incurred in the past in the criminal prosecution of the defendant and collected to reimburse the cost of actually expended judicial resources must also be specifically directed to a future use that is a criminal justice purpose. *Toomer*, 2017 WL 4413146, at *3–4. But that is the type of court cost being challenged here: a fee to recoup criminal justice expenses actually incurred during the prosecution of that particular criminal defendant.

Another distinguishable fee case is *Hernandez v. State*, No. 01-16-00755-CR, — S.W.3d —, 2017 WL 3429414 (Tex. App.—Houston [1st Dist.] Aug. 10, 2017, no pet. h.) (motion for rehearing pending). In *Hernandez*, a panel of this court held that a $25 "district attorney fee" was unconstitutional "to the extent it allocate[d] funds to the county's general fund because those funds allow[ed] spending for" any purpose. *Id.* at *7. The appellant argued that the $25 fee was unconstitutional because of the way it would be spent after its collection. The State, in its brief, likewise focused on the manner in which the fee would be spent in the future, arguing that "so long as the funds *can* be spent," at a later time, on a legitimate criminal justice purpose, the fee does not violate *Peraza*.

Neither party argued—and the *Hernandez* opinion did not analyze—whether the fee could survive a constitutional challenge looking back to the source of the fee versus looking forward to how the collected fee might be spent, but *Peraza* supports such an analysis: *Peraza* states that court costs are "intended by the Legislature" to allow for a "recoupment of the costs of judicial resources expended in connection with the trial of the case," *id.* at 517 (quoting *Weir v. State*, 278 S.W.3d 364, 366 (Tex. Crim. App. 2009)), and it holds that permissible "court costs should be related to the recoupment of costs of judicial resources." *Id.* That language controls our analysis of the constitutionality of a "summoning witness/mileage" fee assessed to recoup out-of-pocket expenses incurred in the prosecution of the convicted defendant who was assessed the fee being challenged.

In sum, the parties in *Hernandez* focused solely on whether the $25 fee fell within the *Peraza* expansion covering fees that, "although not" involved in "the actual trial of a criminal case, may nevertheless be directly related to the recoupment of costs of judicial resources." Because the fee here is an actual recoupment of out-of-pocket expenses incurred in this particular case, it is different from the fee in *Hernandez*, and *Hernandez*, therefore, does not direct the outcome of this fee challenge.

## 2.     The fee challenged in this appeal

The $200 fee Allen challenges was imposed under Article 102.011, which provides as follows:

> (a) A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer: . . . (3) $5 for summoning witness . . . and . . . .
>
> (b) . . . 29 cents per mile for mileage required of an officer to perform a service listed in this subsection and to return from performing that service . . . .

TEX. CODE CRIM. PROC. art. 102.011(a)(3), (b).

## 3.     The challenged fee is for a direct expense incurred by the State

Allen contends that the "summoning witness/mileage" fee assessed against criminal defendants, including Allen, pursuant to Texas Code of Criminal Procedure article 102.011(a)(3) and (b), is facially unconstitutional because *Salinas* holds that a statute that does not specifically identify a judicial purpose to which the fees are to be directed violates the separation-of-powers clause.

Admittedly the statute assessing these fees, like the statute in *Salinas*, does not require that the fee be deposited into a specific account for future criminal justice expenses. But unlike the fee in *Salinas*, the "witness summoning/mileage" fee is an expense incurred by the State in the prosecution of this particular case and is unquestionably for a legitimate criminal justice purpose. *See Salinas*, 523 S.W.3d at 107, 109 n.26. The *Salinas* Court refused to uphold the constitutionality of the

"abused children's counseling" fee that was not directly related to the particular criminal case on appeal from a conviction for assault of an elderly person. *Id.* at 105. And, unlike the "comprehensive rehabilitation" account, which did "not, on its face, appear to serve a legitimate criminal justice purpose," this "witness summoning/mileage" fee does.

*Salinas* did not address reimbursement-based court costs. For this reason, we conclude that *Salinas* does not apply to the "witness summoning/mileage" fee.[7] We conclude that *Peraza*'s reasoning is more appropriately applied to this fee because the State is not relying on how the fee will be expended in the future, but, instead, on the recoupment of actual expenses incurred as part of this case. And *Salinas* does not purport to limit or modify *Peraza*'s focus on whether the fees are incurred as a direct result of or reasonably related to the "recoupment of costs of judicial resources," which this fee unquestionably was. *Peraza*, 467 S.W.3d at 517.

Allen also relies on the Office of Court Administration's website which shows that, in regard to Article 102.011(a)(3) and (b), "100% of the money" collected from the "summoning witness/mileage" fee remains "with the county or city which the [c]ourt serves" and is directed to that county's or city's "General Fund." *See* Office

---

[7]   The Fourteenth Court of Appeals has reached a different conclusion and held the fee unconstitutional. *See Johnson v. State*, No. 14-16-00658-CR, 2018 WL 1476275, at *4 (Tex. App.—Houston [14th Dist.] Mar. 27, 2018, no pet. h.). *Johnson* is pending rehearing before that court.

of Court Administration, *Study of the Necessity of Certain Court Costs and Fees in Texas* (Sept. 1, 2014), at 12, 51 in Criminal Court Costs Section (Fee No. 26, "Peace Officer Fee—Summoning a Witness"; Fee No. 118, "Peace Officer Fee—Mileage"), http://www.txcourts.gov/media/495634/SB1908-Report-FINAL.pdf. *Id.* And because the funds received from the "summoning witness/mileage" fee are "directed to the General Fund (at both the State and local level)," they "need not be spent only on law enforcement [purposes]." *Id.*

We are not persuaded that this report establishes that the statute imposing this fee is unconstitutional for two reasons. First, the *Salinas* Court emphasized the limited value of an OCA report that was not part of the record in the trial court.[8] Second, and more importantly, we have already held that the Legislature's failure to require that the monies be deposited into a segregated account does not make the courts tax gatherers when the fee is directly tied to reimbursement for past judicial expenses incurred in the case.

---

[8] While the Court cited government websites in its discussion of the facial constitutionality challenge to the "abused children's counseling" fee, it specifically stated that it was not relying on the website but referring to it because it "simply illustrates the consequences of the Legislature's" failure to direct that the money "be used for a criminal justice purpose." *Salinas*, 523 S.W.3d at 110 n.36. Because courts in a facial constitutionality challenge must "consider the statute only as it is written, rather than how it [may operate] in practice," it is improper for us to consider the actual use of the funds.

We conclude that Article 102.011(a)(3) and (b) are not facially unconstitutional.

## C. As-applied constitutionality of fee

Allen next argues that the $200 "summoning witness/mileage" fee is unconstitutional as applied to him because it violates his constitutional rights to compulsory process and confrontation. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10 (rights to compulsory process and confrontation); *see also* TEX. CODE CRIM. PROC. art. 1.05; TEX. R. APP. P. 47.1.

In an as-applied constitutional challenge, the challenger concedes the general constitutionality of the statute but asserts that the statute is unconstitutional as applied to his particular facts and circumstances. *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011). To prevail on this claim, it is not sufficient to show that the statute may be unconstitutional as to others; instead, it must be unconstitutional as applied to the challenger. *Id*. A reviewing court must review the particular facts and circumstances of the case based on the record from the trial court. *Id*. Arguments based on the statute's hypothetical application are not relevant to an as-applied challenge. *London v. State*, 526 S.W.3d 596, 599 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

We have previously rejected the same as-applied challenge in a similar case. *Id*. In *London*, we observed that the defendant failed to identify additional witnesses

he could or would have called or any reason the statute is unconstitutional as applied to him in particular. *Id.* The same is true here.

We overrule Allen's second issue.

## Conclusion

We affirm the judgment.

Harvey Brown
Justice

Panel consists of Justices Jennings, Bland, and Brown.

Jennings, J., dissenting.

En banc reconsideration was requested. *See* TEX. R. APP. P. 49.7.

The en banc court has unanimously voted to deny the motion for en banc reconsideration.

En banc court consists of Chief Justice Radack and Justices Jennings, Keyes, Higley, Bland, Massengale, Brown, Lloyd, and Caughey.

Publish. TEX. R. APP. P. 47.2(b).